(126 So. 873)

**McCORD v. STATE ex rel. ALLEN et al.**

**7 Div. 743.**

Supreme Court of Alabama.

Jan. 23, 1930.

468

Merrill & Field, of Anniston, J. M. Miller and E. O. McCord, both of Gadsden, and Frank B. Embry, of Pell City, for appellant.

470

Charlie C. McCall, Atty. Gen., and Thos. E. Knight, Jr., Asst. Atty. Gen., for appellees.

SAYRE, J.

The proceeding in this case was instituted by the filing of an information charging appellant with misconduct in his profession as an attorney at law and seeking his disbarment because of such misconduct.

■■ At the outset of his defense, appellant pleaded in abatement the pendency of a former proceeding against himself for the same misconduct. The proceeding in this case was prosecuted on the relation of George C. Allen and twenty-eight others. The record of the former proceeding was not set out as the rules of good pleading required in order that the court might determine for itself the legal identity of the two proceedings. The demurrer to appellant's said plea in abatement was sustained, and that ruling furnishes the basis for the first of his more than two hundred assignments of error. This court has held that a proceeding of this nature, though not strictly criminal, is of the nature of a criminal proceeding. Thomas v. State, 58 Ala. 365. But that it is not a proceeding for the punishment of crime is abundantly shown by its inherent nature, by the first subdivision of section 6256 of the Code as follows, which makes mandatory provision for the removal of an attorney: "(1) Upon his being convicted of a felony other than manslaughter, or of a misdemeanor involving moral turpitude; in either of which cases the record of his conviction is conclusive evidence. (2) When any judgment is rendered against him, for money collected by him as attorney, upon which judgment an execution has issued, and been returned no property; in which case the record of the judgment and execution is conclusive evidence"—and the succeeding sections which have been in the Codes of the last seventy-five years without question of its constitutionality, and by the great weight of authority. 6 C. J. p. 602, § 64. It is not a proceeding inter partes. The courts all hold that such a proceeding is neither a civil action nor a criminal prosecution. "Like contempt proceedings, proceedings for disbarment are the exercise on the part of a court of their inherent right and power to preserve the orderly administration of justice." "The order entered is but an exercise of the disciplinary jurisdiction which it (the court) has over such officers." 6 C. J. p. 602, § 64, notes 12 and 13. In re Lentz, 65 N. J. Law, 138, 46 A. 761, 763, 50 L. R. A. 415, it was held that, in exercising summary jurisdiction over attorneys, the courts have in view two leading objects, viz.: To compel them to deal fairly and honestly with their clients; and to remove from the profession attorneys whose misconduct has proved them to be unfit for its duties and responsibilities. "In the attainment of these objects the idea of punishment has no appropriate place." The statute, section 6256 of the Code, defines causes for which an attorney must be removed (that is, disbarred), and other causes for which he may be removed or suspended are stated in section 6257. And section 6258 provides that "the proceedings to remove or suspend an attorney, as provided for in the last two sections, may be taken by the court of its own motion,

or upon the motion of any third party." These sections of the Code make no material change in the nature of the proceeding or in its method of procedure as it existed at the common law. The court is still virtually a party, knows its own record, and may be relied upon to protect an attorney under charges from unnecessary harassment. We find no authority or precedent for the plea in abatement in a cause of this character. Nor is any reason suggested by appellant why the judgment in this cause should be reversed on account of the ruling against the plea more convincing than section 5658 of the Code, which is: "In suits by informers, the first filed in the office"—meaning, as we assume, the office of the clerk of the court—"has precedence for the same cause of action, and the latter must abate." The section was brought into the Code of 1907 at the same time with what is now section 5657. We think the purpose of both sections was to regulate suits inter partes, ordinarily so called, the especial purpose of the last-numbered section being to allow a suit by one informer to be pleaded in abatement against another suit on the same cause of action by a different informer. This last-numbered section has reference to qui tam actions which may be brought by any person who will sue; the necessity for the section arising out of the fact that in such cases the party who first sues is entitled to the penalty. 1 C. J. p. 49, § 45. Appellant cites Town of Tallassee v. State, 206 Ala. 169, 89 So. 514, 20 A. L. R. 1127. That was an action quo warranto to annul the charter of a municipality, and the decision was that a judgment in such proceeding was res adjudicata as against a different relator seeking to dissolve the corporation upon the same ground. That case, and as well Sloss-Sheffield Co. v. Milbra, 173 Ala. 658, 55 So. 890, the latter an action for damages for the death of a servant, is without point in the present cause. Our judgment is that there should be no reversal in this cause on account of the trial court's ruling against appellant's plea in abatement.

The statement of grounds for disbarment contained several different specifications of improper conduct. A jury returned a special finding of fact on consideration of which the court rendered judgment finding appellant guilty of deceit and willful misconduct in his profession as an attorney at law and fixed the punishment, as the court termed it, at permanent removal from the practice of his profession in any court of this state. This judgment must be referred to specification 2 of the charge preferred. The findings of the jury under other specifications, if permitted to stand by the court, operated as an acquittal of the charges therein contained. Our inquiry therefore on this appeal is limited to the charge presented in the second specification.

As to specification 2, which is set out in the report, appellant contends that it does not sufficiently show whether the misconduct charged was done by him in his capacity as attorney at law or as a notary public. This refers of course to the charge that appellant, continuando, after alleging the facts in the forepart of the specification, "did falsely and fraudulently certify as a notary public that the said Amanda Knox acknowledged before him on that day that, being informed of the contents of the conveyance, she executed the same voluntarily and did make said certificate in writing as a part of said deed." This allegation of misconduct is due to be read in connection with the preceding charge, contained in the same specification, to the effect, to state its substance in brief, that appellant having undertaken to draw a will for Amanda Knox, did falsely and fraudulently procure her to sign a deed purporting to convey the property, which she wished to devise to her daughter, to one James Wolf, an illiterate negro janitor in the building in which appellant kept his office, who afterwards, on appellant's procurement, conveyed the same to appellant's wife. It is thus made sufficiently to appear that the certificate of acknowledgment was part and parcel of a scheme to get title to Amanda Knox's property. And since, on the allegations of the specification, it appears that appellant came into relation with the Knox woman and directed and controlled what she did in the premises in virtue of his office as an attorney, what he is charged with having done as a notary can no more be segregated from what he did as an attorney than the fact of the procurement of the certificate can be eliminated from the process by which the property of the Knox woman purported to have been divested out of her and invested in appellant's wife. For the reason stated, there was no error in that ruling of the trial court by which appellant's demurrer was overruled, and this we say without intending to change the rule of the authorities, which is that formal and technical pleading is not essential to this proceeding. 6 C. J. p. 605, § 69; Id. p. 603, § 65. The specification sufficiently informed appellant that he was charged with conduct unbecoming an attorney at law and with the particulars of the charge.

Appellant complains of rulings on questions of evidence shown by assignments of error 9, 10, 11, 12, 13, 23, 24, 41, 43, 45, 46, 47, 48, 49, 50, and 51. Some of the evidence excluded by some of the rulings thus indicated related to matters as to which the jury by their special findings in effect acquitted appellant and for that reason require no statement at our hands. Others of this group of assignments are based upon the proposi-

472

tion that appellant was entitled to show the presence at the meeting of the Gadsden bar, which resolved to prefer charges against him, of certain members of the bar who signed the information—so to speak for convenience only of the charges preferred—this as tending to prove bias or prejudice against appellant, and authorities are cited in which it is held that bias or prejudice on the part of a witness may be shown. But these members of the bar were not witnesses, as to any matter having a bearing on the specification on which appellant was disbarred. The bias of a mere prosecutor, who is not a witness, is quite immaterial.

■ The proponents of the motion to disbar were permitted by the court to put in evidence statements by appellant to the witness Longshore, damaging statements without which it will be conceded, a judgment of guilt as charged in the second specification could hardly have been rendered. The contention is that these statements were confessions, and were inadmissible, for the reason that, apart from them, there was no proof of the corpus delicti; that is, adopting the language of the brief, "there was no evidence from which the jury could legitimately draw an inference that Amanda Knox wanted a will written, asked for a will to be written, or had a will written." It appeared that Amanda Knox, who was an ignorant negro woman, more than 80 years of age, had died since the transaction charged in the specification. Appellant's objection at this point proceeds upon the theory that the proceeding was in effect a prosecution for crime, and that proof of the corpus delicti, other than the so-called confession, was prerequisite to its admission. "A confession is a person's declaration of his agency or participation in a crime." "An admission is defined by Mr. Stephen to be 'a statement, oral or written, suggesting any inference as to any fact in issue or relevant or deemed to be relevant to any such fact, made by or on behalf of any party to any proceeding.'" 2 Jones on Ev. (2d Revised Ed.) p. 1634. Appellant was not being proceeded against with a view to his punishment for any criminal offense that may have been involved in the conduct charged against him. "Admissions relate in general to civil actions and confessions always to criminal cases. The distinction is thus drawn because there may be admissions in criminal causes but there are no confessions in civil ones." Jones, supra. The purpose and nature of the proceeding has been stated. It is neither a criminal prosecution nor a proceeding inter partes. It is sui generis. And the court is of opinion that, if appellant admitted facts from which the misconduct charged against him could reasonably be inferred, proof of such admissions was properly received, though no evidence was offered to the specific effect that the admissions were made without having been induced by the hope of reward or the fear of punishment. Moreover, if it were conceded that appellant's statements to Longshore were anything more than inculpatory admissions, still the circumstances under which they were made excluded the notion that they were involuntary. In any event, they were received in evidence without error.

■ The court, over appellant's objection, admitted in evidence a deed of the land in question executed by Amanda Knox to the wife of appellant and a mortgage of the same from Mrs. McCord to Amanda Knox securing a balance of $900. These conveyances corroborated the evidence of Longshore, who testified that after he, acting as counsel for Amanda Knox, discovered the existence of the deed to Wolf and Wolf's deed to Mrs. McCord and sought reparation from McCord on the theory that a fraud had been practiced on his client, evidently the precise fraud charged in specification 2 and none other, appellant executed the conveyances objected to, and, indeed, were admissible in support of the allegations of the specific charge preferred against appellant.

By several questions (assignments 19, 20, 21, 22) appellant proposed to show that Hewes, referred to in the brief as the negro lawyer, got $150 out of the "sale" of the old woman's land to appellant. The idea seems to be to show that Hewes, who, the questions assume, took Della Bush, the daughter of the old woman, to whom, according to the case against appellant, she wished to devise her land, to the witness for relief against the deed to Wolf, was a party to a scheme, the purpose of which was to inveigle appellant into the transaction with the old woman and so to provide material for impeachment. Hewes was not a witness, nor does it appear that he was otherwise a party to the proceeding against appellant. Nor would the fact, if it were a fact, that he got $150 out of the transaction, have tended to show that appellant was giving effect to the old woman's intention when he drew a deed, nor would it have had a tendency to show that in fact she desired a deed or that he (Hewes) was a party to a conspiracy to have appellant disbarred.

■ The court committed no error when it allowed the relators to show by the witness Hunt what appellant said to him about the source of his title on the occasion when he (appellant) offered to sell the land to Hunt nor when it allowed the witness to show the transaction between himself and appellant, by which the witness bargained for a deed to the land, that appellant showed him a deed from the old woman to Wolf and another from Wolf to appellant's wife, that afterwards appellant came to him with a proposal to get the property back, saying that he had learned that the negro Wolf, had got the property by fraud and had run away and left him (appellant) in the "hole," and that it was

"up to him" (the language of the witness) to make it good. This testimony of the witness tended very definitely to connect appellant with the transaction in which the old woman had executed the conveyance divesting herself of her title in the property and appellant's appreciation of the fact that she had been the victim of a fraud.

At the conclusion of the evidence, the court of its own motion excluded the testimony of the witness Hunt to the effect that the land in question was worth $740. Previously the witness had testified that he had bought the land from appellant for $740, but the court, on the objection of relators, had refused to allow the witness to state that the sum so bargained for represented the reasonable value of the land. The argument for appellant is that, "If for no other reason, this evidence was permissible to show that the defendant had done his best to secure a *fair price for the land for his client*—had acted in good faith and used good judgment." But the contention in the proceeding against appellant was that he had drawn a deed and procured his client, Amanda Knox, to execute it, whereas he had been employed to draw a will. Appellant argues that this evidence "would have turned the honest daylight on the *motives*, the *actions*, the *purposes*, the intent of these men," meaning the lawyers who were concerned to bring charges against appellant, "and furnished the jury, who held the *balances of truth* in their hands, a true and honest test of the weight they could give to their testimony." Perhaps this would have been true if appellant had paid the price to the old woman at the time of the transaction under investigation. But the price paid, and procured to be paid, in response to the demands of attorneys who had put on foot an investigation of the transaction, may not have appeared in so favorable a light as appellant's argument would seem to indicate. At any rate, the court is unable to see that this ruling worked any hurt to appellant.

The court is not of opinion that what occurred between the old woman and Will Hall, witness for appellant, before the transaction in question and in the absence of appellant, ought to have been submitted to the jury. What appellant did in executing his attorneyship was not in dispute. The entire controversy raised the single question, What passed between Amanda Knox and appellant in reference to the proposed effect of the paper writing to be prepared by him for her? As to that the witness testified without objection and the necessary presumption is that the jury, in responding to the list of questions submitted to them for decision gave his testimony that credit to which it was entitled. Appellant at this point cites section 142 of the second edition of Jones on Evidence (not the revised second edition). We quote: "Mr. Stephen thus more fully states the rule: 'When there is a question whether a person said or did something, the fact that he said or did something of the same sort on a different occasion may be proved, if it shows the existence on the occasion in question of any intention, knowledge, good or bad faith, malice or other state of mind, or of any state of body or bodily feeling, the existence of which is in issue or is deemed to be relevant to the issue; but such acts or words may not be proved merely in order to show that the person so acting or speaking was likely on the occasion in question to act in a similar manner.'" The author then speaks of some circumstances in which it may be proper to show other similar transactions where proof of intent is necessary, "but," to quote further, "in cases of this (that) character the evidence of other transactions is irrelevant, unless such collateral acts are shown to be so connected with the matters in litigation as to make it apparent that the party to be charged," in this case appellant, "had a common purpose in both." This authority will suffice to dispose of the assignments of error just here under consideration. In this connection also appellant offered to show by the witness Will Hall that "after that"—after what or how long after or upon what occasion does not appear— he (the witness) had a conversation with the old woman, Amanda Knox, in reference to whether she had effected a sale through Mr. Roy McCord (appellant). Appellant cites Jones on Evidence (2d Ed. Revised) § 300. The cited text shows that statements, apparently hearsay, may be original evidence when going to show knowledge, information, or intent on the part of a person to be charged, and some other matters of like kind. But the authority last above quoted goes to show that the testimony here in question was hearsay and inadmissible. The proposed testimony was not a verbal part of any relevant act. As to the interest of the alleged declarant, Prof. Wigmore says (3 Wigmore on Evidence, § 1466): "The fact stated must of course have been against interest *at the time of the statement;* else the influence for correctness would not operate." And further the same writer in section 1462: "It must be remembered that it is not merely the statement that must be against interest, but the fact stated. It is because the fact is against interest that the open and deliberate mention of it is likely to be true." And (section 1463) "Again, the same fact may or may not be against interest according to the *parties' situation in the case* in which it comes into dispute; it may be against interest in one aspect, but in favor of interest in another." And I think it ought to appear that the declarant probably, at least, had the notion that the declaration was against interest; for otherwise the declaration could have no sanction by reason of the fact that it was against interest, could not with propriety be

termed deliberate. Further, the burden was on appellant to show the trial court that the old woman's alleged declaration, which he proposed to prove, was against interest in the manner heretofore stated, this for the reason that error will not be presumed. Appellant undertook to discharge this burden in this fashion: "We offer to prove by him (the witness Will Hall) that he saw her after that on an occasion when he asked her how she was getting along in the matter and she said that he had made a sale for her and she was going to get her money shortly." The evidence for the state had been that, after the old woman went to lawyers other than appellant to get her land back or money for it, and after her attorneys had filed a bill in chancery charging just the wrong alleged in the second specification of the information in this cause, appellant suggested, and the old woman accepted his suggestion, that he would then buy the land from her, and, in pursuance of an agreement to that effect, she made a deed to appellant's wife in consideration of $1,500, of which $600 was paid in cash, $500 of which went to pay the expenses of her suit; the balance of $900 being deferred and evidenced by two notes payable eight and fourteen months in the future. There was certainly no error in the court's ruling if the proposed testimony related to what happened after the old woman, on appellant's suggestion and procurement, had sold her land to his wife. And, even though it be suggested that the court might have exerted itself to learn whether appellant in his offer referred to the purported sale to James Wolf or that the court should have inferred that appellant's reference was to that transaction, still it ought to be taken into consideration that Amanda Knox was not a party to the pending investigation, had no interest proximate or remote in its outcome, and that at the time of the alleged declaration, if it be assumed to have been made with reference to the first transaction between declarant and appellant, the court was not authorized to assume that Amanda Knox's interest, if determined according to right and justice, was against the declaration then made, for that was precisely the issue of fact to be determined in the pending case. The court had no authority to determine that issue against appellant in order to provide a basis for admitting the old woman's declaration as against her interest—this we say, even though appellant invoked the court's ruling to that effect. Nor, we may further add, was anything offered to the court as going to show that she understood she was making a declaration against interest, that her declaration was deliberate, as the authorities require in cases circumstanced as was this. The statement which appellant proposed to show was nothing more nor less than an effort, not to contradict Amanda Knox, for she had not testified, but to rebut the case for relators by evidence of an unsworn declaration by Amanda Knox which, for aught appearing, at the time of its making, may as well have been in agreement with her interest as against it. In other words, the record fails to show an offer to prove the deliberate mention by Amanda Knox of any fact then appearing to be against her interest or which she then had any reason to believe was or may have been against her interest; hence the conclusion that the declaration proposed to be proved had no more sanction of adverse interest than it had of oath or spontaneity, and that it was rejected by the court without error as being mere hearsay. The decisions of this court, referred to as being in conflict herewith, dealt with very different facts.

■■ On cross-examination, the court permitted counsel representing the prosecution—so to speak of counsel who appeared against appellant in the trial court—to ask appellant, who was testifying as a witness in his own behalf, whether Mr. Hood had told appellant that the bar had discussed an incident in which appellant "had contributed to the moral delinquency of a girl by the name of Chandler under sixteen years of age." This question had reference to a discussion of some of appellant's alleged conduct on account of which the bar of Gadsden had held a meeting looking to the bringing of charges against him with a view to his disbarment. Appellant's testimony had been, in effect, that he had gone into the meeting and asked "them" what the meeting was about and "what instance they had under observation." Appellant, witness, did not remember what particular instances Mr. Hood, who answered his question first above noted, and answered by saying that he "had no recollection of that." So, in substance, with reference to several other questions put to appellant on cross-examination. Appellant then moved the court to exclude his answer, which motion the court overruled. To each ruling appellant reserved an exception. Relators made no effort to contradict appellant. The right of cross-examination, thorough and sifting, belongs to every party as to the witnesses called against him. Code, § 7731. This, as we have heretofore said, was not a proceeding inter partes; but we do not doubt that the prosecuting attorneys had the right thoroughly to sift the testimony of appellant as a witness in his own behalf; but his answer to these questions, as for anything appearing of record, was conclusive, and the attorneys in charge of the proceeding against appellant appear to have taken that view, for, as we have said, no effort was made to contradict the witness. The court's reason for these rulings was stated in this language: "It would not be competent, of course, unless the matter had been gone into, but when a part of it is disclosed, all of it may be." From the bill of exceptions, pre-

pared in narrative form, we infer—the inference is quite clear as for that—that appellant's counsel "went into" that on the cross-examination of the witness Pilcher. Moreover, the judgment now is that, in view of the negative answer there should be no reversal on account of the ruling here in question. If this and similar questions answered in like manner had been considered to be of sufficient importance to avoid the jury's finding of fact, notwithstanding appellant's negative answers, if that were the only reason for approving the court's rulings, these rulings should have been made the basis of a motion to withdraw the case from the jury or for a new trial.

Assignments 92 to 99, both inclusive, are based upon rulings of the court by which relators were allowed to ask appellant whether he had not made certain incriminatory admissions, confessions, as appellant would refer to them, to the lawyer witness Giles. We have heretofore stated our consideration of rulings of this character.

The argument to which appellant objected, as shown by assignments 108 to 111, was addressed to a specification as to which the findings of the jury resulted favorably to appellant. The complaint now is that the argument was improper in any event and tended unjustly to bring appellant into disrepute with the jury. The argument called attention to the evil consequences of the practice charged in a specification other than that on which appellant was disbarred, and we are unable to say that it should be accepted as sufficient reason for a reversal.

Appellant complains that the trial of the issues of fact submitted to the jury was not "open, honest, fair and impartial," for the reason, among others, that the trial court refused "to allow him to make a special memorandum of the specifications that the defendant insisted should be answered no." We are not sufficiently well apprised of the meaning of the exception reserved at this point, or, for that matter, of the court's ruling as reported in the bill of exceptions, to be able to say that there was reversible error. Some presumptions must be indulged in favor of the fair intent of the trial court and its rulings. Nor do we discover any unfairness in the issues of fact submitted to the jury.

Interrogatory No. 30, submitted to the jury for their finding, along with forty-six others, the answers to which were intended to furnish the basis of fact on which judgment was to be pronounced by the court, was in this form: "Are you satisfied from the evidence in this case that Roy D. McCord intended to defraud Amanda Knox of the lands in Cherokee County?" The record shows the jury's answer to have been "Yes." When the jury came into court with

their verdict, it was noted that the word "explain" had been written under interrogatory 30. The court explained that he had written the word there "to be used by him in his charge to the jury," and had inadvertently allowed it to remain, and then erased the word. Appellant thereupon reserved an exception to the action of the court in writing the word under the interrogatory and then excepted further to the court's action in erasing it. The brief for appellant now complains that the procedure indicated called undue attention to the interrogatory or "the jury might have come to the conclusion that it was some *secret code or silent suggestion* to them as to their action on the question." We have been at unusual and perhaps unnecessary pains to state our consideration of the various exceptions noted in the brief. As for the question just here submitted for decision, we think it unnecessary to say more than that no harm appears to have been done by the matter complained of and that no proper cause of reversal therein appears.

We consider assignment 66 in the order of its statement in the brief for appellant. The witness Horton had given testimony bearing on a specification as to which the jury's finding of fact resulted favorably to appellant. Among other things he said he had been present at a political meeting in August of the year before. Then, and now in his brief, appellant put forward the proposition that the accusing members of the bar of Gadsden were influenced by the desire to be revenged for some political defeat they had suffered at the hands of appellant on that occasion. The relators objected to testimony by the witness that appellant was present at the meeting. The court's ruling was that the political meeting had nothing to do with the case against appellant. The court ruled correctly. The matter sought thus to be introduced was too remote, and, besides, as we have said, the motive behind the prosecution was immaterial. The only pertinent inquiry was whether appellant was guilty as charged.

Charge 1, given on request of relators (page 252 of the record), is criticized for its use of the word "satisfied." It is urged that it was necessary that the jury be "satisfied beyond a reasonable doubt." We have stated our reasons for holding that the proceeding against appellant was not a prosecution for crime. There was no requirement of law that the jury should be satisfied beyond reasonable doubt. But, aside from that, the requirement that the jury be "satisfied" was even more exacting than would have been a requirement that they be satisfied beyond a reasonable doubt. Torrey v. Burney, 113 Ala. 504, 21 So. 348; Nabers v. Long, 207 Ala. 270, 92 So. 444; Miller v. Whittington, 202 Ala. 411, 80 So. 499, and cases there cited.

The charge might, possibly, have been refused without error because it states the issue of fraud differently from its statement in the second specification; that is, it omits some of the factual elements of the fraud charged in specification 2. However, its proposition, as far as it went, is stated in the language of the thirteenth interrogatory, and its hypothesized finding is limited to that interrogatory. The charge did not pretend to predicate a result as to the whole case, nor did interrogatory 30 so pretend. It was not essential that each question submitted to the jury should cover all issues in the case. 38 Cyc. 1913. The result of the proceeding in hand was to be ascertained and declared by the court having due regard to the jury's special findings, and it is safe to assume that guilt was pronounced, not upon the finding in answer to that interrogatory alone, but upon the composite result of the findings as to all the interrogatories framed to state the issues presented by specification 2. Like observations apply to charge 2, made the subject of the 116th assignment of error. This charge is denounced by appellant's brief as vicious and dangerous; but, in view of the law, as we have stated it, we are unable to find just cause of reversal in the fact that it was given by the court. It might have been more appropriately worded, it may possibly have involved some misleading tendency; but, on the whole record, it is clear that the jury were not misled, and that, upon consideration of the special findings other than that numbered 30, the court was justified in rendering its judgment of disbarment—indeed could not avoid it.

■ The court, instructing the jury as to their duty in the premises, told them that it would be necessary in their verdict to respond to all the questions of fact submitted to them, and then stated each interrogatory separately, but, omitting any specific mention of interrogatories 15 and 16, passed from 14 to 17. Interrogatory 15 had relation to the alleged conduct by appellant concerning a bill which he had been employed to file. That, however, was of no consequence, for the jury's finding, if concurred in by the court, made necessary a judgment in favor of appellant as to that specification. We have no alternative but to infer that the court's failure to mention interrogatory 16, which was the first of the interrogatories relating to specification 2, on which the judgment of disbarment was pronounced, was merely inadvertent, brought about, most likely, by the fact that interrogatories 16 and 17 were substantially identical. Moreover, appellant, when reserving numerous exceptions to the court's oral charge to the jury, had nothing to say with reference to the omission of any statement as to interrogatory 16, nor was any special instruction asked as to it, as appellant should have done if he deemed it necessary that special attention should be called to that interrogatory.

Appellant reserved exceptions to the action of the court in submitting each of the interrogatories to the jury for their answer. We find in all this no reason for a reversal. The chief complaint as to each of these interrogatories seems to be that they erroneously stated the measure of proof to be observed by the jury in making their findings. We have stated our view of that question. We have said that it was enough that the jury were "satisfied."

■ Appellant assigns for error the action of the court in refusing to submit interrogatories to the jury in the forms suggested by him rather than the forms employed by the court. Each of appellant's proposals under this head, in the shape of requested charges, would have referred the legal interpretation of the specifications to the jury. It was no proper function of the jury to pass upon questions of law. Their office was to decide questions of fact.

Several assignments proceed upon the theory that appellant was entitled to the affirmative instruction, this, in part at least, upon the theory that appellant's admissions should not have been considered against him for the reason that there was no preliminary proof of their voluntary character. We have stated our consideration of the matter here proposed for error.

■ One further contention only needs to be specially noticed. Appellant's final insistence is that sections 6256, 6257, and 6258 of the Code of 1923, under the last two of which this proceeding was commenced and prosecuted, have been repealed by the Act approved August 9, 1923, entitled "An Act to provide for the organization, regulation and government of the State Bar including admissions and disbarments of lawyers." Acts, p. 100. The relevant part of this act is embodied in section 6225 of the Code, and provides, among other things, that "the Board"—board of commissioners of the state bar—"shall investigate and pass upon all complaints that may be made concerning the professional conduct of any person who has been or who may hereafter be admitted to the practice of the law," and "in all cases in which the evidence, in the opinion of a majority of the board, justifies such a course, they shall take such disciplinary action by public or private reprimand, suspension from the practice of law, or exclusion and disbarment therefrom, as the case shall in their judgment warrant * * * but said board shall not have jurisdiction over anything which may have occurred before the 9th day of August, 1923." The Code of 1923, including the sections to which we have referred, was adopted August 17, 1923. Acts 1923, p. 127. The transaction

on which was based the charge of misconduct in the matter of Amanda Knox occurred in December, 1924. The concluding section of the State Bar Act provided that "all laws and parts of laws in conflict herewith are hereby expressly repealed." Sections 6256–6258 have had a place in the Code of this state since 1852. The Act of August 9, 1923, was incorporated in the Code of 1923 in virtue of the last section of the act adopting the Code. In this State Bar Act there is no specific mention of sections 6256–6258 or of the matter therein provided. These sections, in our opinion, have not been repealed. The enactment relative to disbarment embraced in this State Bar Act is merely cumulative. The power (to disbar) exists inherently as well as by statute in each of the courts of the state. Smith v. State, 1 Yerg. (Tenn.) 230. Moreover, section 9 of the act providing for the organization, regulation, and government of the State Bar including admissions and disbarment of lawyers (Acts 1923, p. 100), provides that causes of disbarment therein enumerated and provided for and methods of procedure are cumulative. It is well settled that the Legislature may provide that certain acts or conduct shall require disbarment, but "the accepted doctrine is that statutes and rules merely regulate the power to disbar instead of creating it, and that such statutes do not restrict the general powers of the court over attorneys, who are its officers, and that they may be removed for other than statutory grounds." 6 C. J. p. 584, where many adjudicated cases are cited. To the same effect is 6 C. J. p. 580, where, in note 55, more than an hundred adjudications are cited from the courts of some forty states and England. The State Bar Act contains no provisions such as are found in sections 6256–6258. It provides that "the Board shall, subject to the approval of the Supreme Court, formulate rules governing the conduct of all persons admitted to practice and shall investigate and pass upon all complaints," etc. Section 6. But it will hardly be contended that the board has the power to repeal sections of the Code. Our conclusion therefore is that sections 6256–6258 are still in full force and effect. It results that appellant's last point is of no avail.

Recurring to what has been said on the subject of the admissibility of the alleged declaration of Amanda Knox to the witness Will Hall, the prevailing opinion cites authorities which prove that "declarations made by a person which are at *variance with his pecuniary or proprietary interest*, are admissible in evidence of their own truth, under certain circumstances" (Humes v. O'Bryan, 74 Ala. 64), and then, as I am bound to presume, in order to show that the declaration was at variance with the pecuniary or proprietary interest of the alleged declarant, Amanda Knox, the prevailing opinion on this question says: "It" (the declaration) "was clearly against the pecuniary interest of said Amanda for, if she made a will, she had made no irrevocable disposition of her property, but if she made a deed, she placed it beyond recall." I am unable to follow the logic of the majority statement. The old woman's ownership of the property was not in dispute. Her interest was to have her attorney do with it what she desired to have done with it, whether by will or deed was the question at issue. The court holds in effect, to state one alternative of the court's opinion, that, if she desired a deed to be made, then her alleged statement to the effect that appellant had drawn a deed for her was a statement against pecuniary or proprietary interest and so had the sanction that is allowed to statements against interest. I do not think the trial court could be expected to anticipate this court's ratio decidendi.

My opinion is that the judgment should be affirmed.

All the Justices concur in opinion of Justice SAYRE, except as to the two questions mentioned in the opinion of Chief Justice ANDERSON.

### ANDERSON, C. J.

While I concur in the opinion of Justice SAYRE in the treatment of this case upon most of the points involved, I cannot agree that the trial court did not commit reversible error as to the ruling hereinafter discussed.

The charge upon which the appellant was adjudged guilty proceeded upon the theory that one Amanda Knox employed him professionally to write her will, and instead of this he prepared a deed, naming the janitor as grantee, and subsequently had the said janitor convey the property to the appellant's wife; that the said Amanda Knox was a very old and ignorant negro woman, and the appellant fraudulently had her execute a deed while under the impression that she was signing a will. The appellant's contention was that she did not employ him to prepare her will, but to sell her land, and that the deed was made by her with full knowledge of its character and for the purpose of enabling him to sell the land and make title to the purchaser. Therefore a conflict was presented as to whether or not she employed him to prepare a will and signed the deed thinking it was a will, or made him the deed knowing it was such an instrument and for the purpose of enabling him to sell the land for her. I think the trial court erred in not permitting the witness, Will Hall, to testify as to the statement made him by said Amanda Knox, who was dead at the time of the trial, to the effect that, after that, meaning, of course, after the happening of other matters leading up to and during the visit of witness and Amanda Knox to appellant's office, he had a conversation with said Amanda Knox where-

in he asked if she had effected a sale through Mr. Roy McCord, and she said that "he had made a sale for her and she was going to get her money shortly." This evidence tended to corroborate the appellant's theory and to discredit the charge that Amanda employed him to prepare a will, and it was clearly against the pecuniary interest of said Amanda, for, if she made a will, she had made no irrevocable disposition of her property, but, if she made a deed, she placed it beyond recall. It is not a question as to whether the said Amanda or her estate was interested in the outcome of the present controversy, but whether or not the statement she made was, at the time, contrary to her pecuniary or proprietary interest.

As said in Jones on Evidence, § 323: "It has long been settled as one of the exceptions to the general rule excluding hearsay, that the declarations of persons since deceased are admissible as evidence, provided the declarant had peculiar means of knowing the matter stated, if he had no interest to misrepresent it and if it was opposed to his pecuniary or proprietary interest."

To like effect was the rule stated by our own court in the case of Hart v. Kendall, 82 Ala. 144, 3 So. 41, 43, in the following language: "While the general rule is that the declarations of a person as to a transaction with another, being regarded as hearsay, do not bind a third person, whose rights are involved, such declarations, when contrary to the pecuniary or proprietary interest of the declarant, and he is deceased, are competent evidence against third persons, though their rights may be affected. Humes v. O'Bryan, 74 Ala. 64; Trammell v. Hudmon, 78 Ala. 222."

 I am therefore of the opinion that the trial court committed reversible error in sustaining the objection to let the witness Hall testify as to the declarations of Amanda Knox as above referred to and discussed and Justices GARDNER, THOMAS, BOULDIN, BROWN, and FOSTER concur. The said Justices also hold that the trial court erred in not permitting the witness Hall to testify as to the conversations with said Amanda Knox preparatory to calling on McCord and of the statement as to the nature and character of the business she desired him to transact for her. They think that these declarations or statements are explanatory of the motive, intent, or purpose for which she went to see McCord and what she employed him to do (that is, whether to prepare a will or convey the land by deed for the purpose of having him sell it for her), and that this also falls within the exception to the rule against hearsay evidence, and that the same tended to corroborate the appellant's theory of the transaction.

The judgment of the circuit court is reversed, and the cause is remanded.

All the Justices concur, except SAYRE, J., who dissents.