219 So.2d 346

**In the Matter of Thomas W. SULLIVAN.**

**3 Div. 277.**

Supreme Court of Alabama.

Jan. 30, 1969.

Rehearing Denied March 6, 1969.

Fred Blanton, Birmingham, for petitioner.

Wm. H. Morrow, Jr., Montgomery, Gen. Counsel for Alabama State Bar.

518

against him and disbarring him as a practicing attorney at law.

As originally filed the complaint against Sullivan contained four charges. By subsequent amendments seven additional charges were added to the complaint.

Charge Eight was withdrawn, and resolutions of not guilty were entered by the Board of Commissioners as to charges one, two, three, four, ten, and eleven, and resolutions of guilty as to charges five, six, seven, and nine.

Charge Five accuses the petitioner of violation of Rule 25, Section A, of the Rules Governing the Conduct of all Persons admitted to the Practice of Law in the State of Alabama, in that in May or June 1962, the petitioner while serving as a referring or forwarding attorney, did in association with E. C. Boswell, submit to the Inferior Court of Geneva County, Alabama, a divorce case, namely Dominick Rugerrio v. Jean Rugerrio, Case No. A-256, wherein the bill of complaint and deposition of complainant represented to the court that the complainant was a bona fide resident of the State of Alabama, when in truth and in fact, the petitioner knew, or had reasonable cause to believe, that neither the complainant therein nor the respondent was a bona fide resident of the State of Alabama.

Rule 25, Section A, as amended, reads as follows:

"No person heretofore or hereafter admitted to practice law in Alabama shall

(a) knowingly or willfully make any false representations of fact to any judge, court, or jury to induce a favorable action or ruling by either;

(b) File or prosecute or aid in the filing or prosecution of any suit, cross bill, or proceeding seeking a divorce in a Court in Alabama as attorney or solicitor for a complainant or cross complainant therein or serve as referring or forwarding

PER CURIAM.

This is a review of an order or resolution of the Board of Commissioners of the Alabama State Bar finding Thomas W. Sullivan guilty of certain charges preferred

attorney for such complainant or cross complainant with knowledge or reasonable cause to believe that neither party to such suit, cross bill, or proceeding is at the time of the filing of the bill of complaint or cross bill of complaint therein, a bona fide resident of the State of Alabama;

(c) While acting as attorney for either party in any suit for divorce in any Court in Alabama represent to the Court or conspire with any party, attorney, or person to represent to the Court that either party to such suit is a bona fide resident of Alabama, knowing such representation to be false."

Charge Six charges petitioner by his acts in connection with the Rugerrio case, with violating Rule 16–A of the Rules Governing the Conduct of all Persons admitted to Practice in this State by introducing or offering to introduce testimony which he knew to be false or forged.

Charge Seven charges petitioner with conduct unbecoming an attorney in violation of Rule 36, Section A, as amended, governing the conduct of attorneys in Alabama.

Charge Nine is to the effect that on, to-wit, 27 December 1965, Mrs. Florence Nichols, then a resident of the State of Delaware, consulted with the petitioner in his office in Montgomery, Alabama, and was advised by petitioner that he could obtain an Alabama divorce for her within the near future. Mrs. Nichols thereupon paid petitioner $650.00 and then returned to Delaware. It is further charged that Mrs. Nichols has made numerous attempts to contact the petitioner by letter and telephone, and obtain information concerning her divorce; that a diligent search of the records of the Bureau of Vital Statistics of the State of Alabama, failed to disclose that petitioner has instituted any proceedings for divorce on behalf of Mrs. Nichols;

that the petitioner's acceptance of a fee from Mrs. Nichols, and his assurance that he would institute and prosecute a divorce action in violation of Rule 25, Section A, as amended, of the Rules of Conduct governing Attorneys in this State, and his failure to respond to inquiries from Mrs. Nichols, constituted conduct unbecoming an attorney in violation of Rule 36, Section A, governing the conduct of attorneys in this state.

## Evidence

### Charges Five, Six, and Seven (Ruggerio Divorce).

Mrs. Jean Ruggerio testified by deposition taken at Berkeley Heights, New Jersey, that she was a life-long resident of New Jersey. She had married Dominic Ruggerio and for over ten years prior to 10 December 1963, they had resided at Stonehouse Road, Basking Ridge, New Jersey.

On 10 December 1963, Mr. Ruggerio told her he had some papers from Alabama and he wanted her to sign them. He stated he wanted to go to Alabama and get a divorce—that some of his friends had gone to Alabama and gotten a divorce in a matter of a week. Mr. Ruggerio further told her he had seen a doctor and made arrangements to take a two weeks sick leave to go to Alabama to get the divorce.

On the envelope in which the papers were sent was the name Sullivan, though she did not remember the first name.

That night (10 December 1963) she and Mr. Ruggerio went before Harold Thompson (shown by other papers to be a notary public), and she signed the papers. Mr. Ruggerio left their home that night.

About a week later Mr. Ruggerio called her at her mother's home. He said he was in Newark, and told her that things did not

go in Alabama as he expected, and he wanted her to meet him at their home that night and talk things over. She went to their former home that night and Mr. Ruggerio told her he wanted her to return home, forget about everything, and start all over. However, she thought it best that they stay apart for awhile.

On 1 April 1964, she called Mr. Ruggerio at their former home and a girl answered the phone. She asked what she was doing there and the girl told her she and Mr. Ruggerio planned to get married. She asked her how she could when she (Mrs. Ruggerio) had not divorced him.

She called Mr. Ruggerio at his place of employment but he had left to go home. He later called her at her mother's home, and then came there. He handed her a divorce decree stating it was as legal a divorce as she could get.

This decree was rendered by the Inferior Court of Geneva County on 18 January 1964, in the case of Dominic Ruggerio v. Jean Ruggerio, submitted on the complaint of Dominic Ruggerio, and the answer and waiver of Jean Ruggerio, together with an affidavit by Dominic Ruggerio to the effect that he was a bona fide resident of Montgomery, Alabama, residing at 100 Commerce Street, that Jean Ruggerio was a nonresident of Alabama and had voluntarily abandoned him in 1961.

Mr. E. C. Boswell, a practicing attorney in Geneva, Alabama, testified that the Ruggerio divorce case was forwarded to him by the petitioner. Dominic Ruggerio came to Geneva on 12 December 1963. The witness did not know how long Ruggerio had been in Geneva. Perhaps the petitioner came with him but he did not remember. Jean Ruggerio, to the witness' knowledge, did not come to Alabama. The witness represented Dominic Ruggerio in the divorce proceedings. Ruggerio made an affidavit stating he was a resident of Montgomery, Alabama, and that Jean Ruggerio, his wife, had voluntarily abandoned him on 7 June 1961. Other than the affidavit, the witness made no inquiry as to Ruggerio's residence. Ruggerio gave his testimony before the Register of the Inferior Court of Geneva County on 12 December 1963, and on 18 January 1964, the divorce decree was signed by the judge of said court. Mr. Boswell did not know how long Ruggerio remained in Geneva after appearing before the Register on 12 December 1963.

An affidavit of Judge William F. Thetford, Judge of the Fifteenth Judicial Circuit of Alabama (Montgomery County), was received in evidence. Judge Thetford deposes that he has been such judge since 1 November 1963, specifically assigned to hear domestic relations matters, including divorces. Continuously during his tenure the court dockets of said court have been current as to the processing of uncontested divorce cases. In proceedings involving a legitimate uncontested divorce, no more than a few hours, or at most one or two days, is required for disposition of such case.

### Charge Nine (Nichols Matter)

Mrs. Florence Nichols, formerly Mrs. Florence Forcelli, testified before Maultsby Waller, the Commissioner appointed to take testimony upon the charges against the petitioner, that she first became acquainted with petitioner in February 1961, when she came to Alabama to get a divorce. She was then living in Danbury, Connecticut. On this occasion she was accompanied by Mr. Nichols. She and Nichols went to petitioner's office and she signed some papers. She returned to Connecticut and in April 1961, received from petitioner a copy of the decree divorcing her from Forcelli. Two weeks later she and Nichols were married.

In 1965, Mrs. Nichols had separated from Mr. Nichols and was living in Wilmington, Delaware. In the first part of December 1965, she telephoned petitioner, identified

herself as having been Mrs. Forcelli and told petitioner she wanted to come to Alabama and get a divorce. Petitioner told her he would send her some papers in blank for Mr. Nichols to sign before a notary, and that his fee would be $650.00. She received the papers from petitioner and Nichols signed them before a notary public and returned them to her. She was supposed to mail the papers to petitioner who instructed her he would tell her when to come to Alabama.

However, Mrs. Nichols learned that some friends were driving to Tallassee, Alabama, on 24 December 1965, and she decided to ride down with them.

On 26 December 1965, she drove to Montgomery and called petitioner, telling him she had the executed papers, and the fee, and was told to come to petitioner's office. There she talked with petitioner and signed three sheets of paper which were blank except for her name typed on the bottom.

She asked petitioner when she would "get the papers" (divorce decree) and he told her not to be alarmed if she didn't get them until around February as the judge he was going to get to "do it" was on vacation. Mrs. Nichols paid petitioner $650.00 in cash, for which he gave her a receipt. The next day she returned to Tallassee, and from there returned to her home in Wilmington, Delaware.

The petitioner did not discuss with her any requirements as to residence in Alabama for divorce purposes.

Not having heard from the petitioner at the end of January 1966, she placed a call to petitioner's office but was told by his secretary he was out.

At the end of March, and again on 12 April 1966, she wrote to petitioner addressing the letters to petitioner's office in Montgomery. The envelopes bore her return address. She stated in each letter that she had not heard anything from petitioner, nor received any papers, and if anything was wrong to please notify her. She further told petitioner that if she were not going to get a divorce, she wanted her money back. She also recounted in her letters her efforts to reach petitioner by telephone. These letters were never answered, nor were they returned to her.

Mrs. Nichols moved from Wilmington back to Connecticut in April 1966, and prior to her departure she left her forwarding address in Wilmington. Since June 1966, she and Nichols have resumed their marital status.

The only witness called by petitioner testified before the Board of Commissioners on 3 March 1966. He testified that on 26 or 27 December 1965, he was in petitioner's office when a woman client came in. Petitioner asked the witness to wait outside his office. As the client left, he overheard her and petitioner discussing a divorce and petitioner told the woman her husband would have to sign some papers—that things were pretty hot in Alabama and "he couldn't jeopardize his law practice" and the petitioner discussed residency in Alabama.

On cross examination, the witness stated he did not remember the name of the woman, and he had first discussed this matter with the petitioner about a week before his appearance.

### Assignments of Error

Assignment of error II is to the effect that the Board of Commissioners erred in overruling petitioner's objections denying the jurisdiction of the Board of Commissioners.

The petitioner, at the opening of the hearing before the Board of Commissioners of the Alabama State Bar, filed a pleading denying the jurisdiction of the Board to entertain the disbarment proceedings. Three grounds, A, B, and C, were set forth in support of the motion.

Ground A sets forth that there is a disparity of members of the Alabama State Bar among the thirty-six judicial circuits

of Alabama, and therefore the composition of the Board is unconstitutional.

Ground B asserts that Rule 25, Section A, as amended, is invalid for the reason that the Board was unconstitutionally constituted.

These two grounds are argued jointly. It is petitioner's contention that since each judicial circuit elects one commissioner, and some circuits have a relative few members of the bar, while others have a large number of members, the composition of the Board is malapportioned and violates the "one man one vote rule."

We have considered the cases cited by appellant in support of his contention above set out, particularly Baker v. Carr, 369 U. S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663; Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; Ellis v. Mayor and City Council of Baltimore, D.C., 234 F.Supp. 945, and others.

We do not consider that the doctrines announced in this line of cases were intended to apply to an association of a professional group, even though organized under the aegis of legislation, but were intended to apply to political governing bodies in the classical sense.

■ The organization of the Bar for the governing of the legal profession, and the administration of its duties is a matter peculiarly within the province of the Alabama Bar. We hold that the method of electing the Board of Commissioners is in no wise invalid.

The above disposes of petitioner's contention that Rule 25, Section A, as amended, is invalid for the reason that the Board of Commissioners was unconstitutionally constituted, i. e., malapportioned.

■ We observe, however, that even if it be assumed the petitioner's contention as to malapportionment of the Board contains merit, which we do not concede, it could not aid petitioner as laws passed by a malapportioned legislature are not invalid,

Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, supra; Horton v. Bomar, 6 Cir., 335 F.2d 583, nor are acts of a malapportioned county commission invalid, Avery v. Midland County, Texas, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45, or acts of a possibly racially malapportioned draft board, Clay v. United States (C.C.A. 5), 397 F.2d 901; Nelloms v. United States (C.C.A. 5), 399 F.2d 295.

■ Further, the Board merely formulates rules, subject to approval by this court. Section 25(c), Title 46, Code of Alabama 1940. The rules formulated by the Board and submitted to this court are not effective until approved by this court. In its ultimate sense, the Rules of the Bar are therefore the rules of this court, and it cannot be rationally argued that this court is malapportioned since the members are elected statewide.

■ Ground C of the motion is to the effect that the Board is unconstitutional in that it is instituted in violation of Sections 42 and 43 of the Alabama Constitution of 1901, guaranteeing the separation of powers of government into three magistracies, the legislative, the executive, and the judicial, and further that the Board is instituted in violation of Section 139 of our Constitution relative to vesting judicial power.

These points were decided adversely to petitioner's present contentions in Ex parte Thompson, 228 Ala. 113, 152 So. 229, 107 A.L.R. 671. Counsel for petitioner argues, however, that the decision in Ex parte Thompson is erroneous and should be re-examined and overruled. We are not in accord with this view but observe that upon a reading of the lengthy and exhaustive opinion in *Thompson,* we find nothing that questions its correctness.

Assignment of error III presents the question of the qualification of some eight members of the Board of Commissioners to sit in the present proceedings since they were members of the Board in 1961, at the time when Rule 25, Section A as amended,

was formulated by the Board of Commissioners.

■ A judge is not disqualified to try a case because he had been a member of the legislature enacting a statute involved in litigation before him, Norton v. Lyon Van and Storage Co., 9 Cal.App.2d 199, 49 P.2d 311, nor does the fact that a prospective juror favors a statute, afford evidence that such juror is biased against a person accused of violating such statute. State v. Sullivan, 97 Wash. 639, 166 P. 1123. See also 48 C.J.S. Judges § 82, and 50 C.J.S. Juries § 244. By analogy those members of the Board who were also members at the time Rule 25, Section A was formulated were not, for that reason, disqualified to sit in the present proceedings.

Assignment of error V asserts error because of the action of the Board of Commissioners in denying petitioner's motion to suppress the deposition of Jean Ruggerio.

The grounds of such motion were that if the deposition were taken under the provisions of Title 7, Secs. 457 et seq., the deposition was faulty in that (1) no affidavit as to the necessity for taking such deposition was made before the proper official as required by Section 458 of Title 7, and (2) if the deposition was attempted under the provisions of Title 7, Secs. 474(1) et seq., it should be suppressed for the reason that such codal provisions are inapplicable to disbarment proceedings before the Board of Commissioners of the State Bar.

Counsel for the State Bar concedes that no affidavit was made prior to the taking of the Ruggerio deposition, but contend that the deposition was taken under the provisions of Title 7, Secs. 474(1) et seq. We can therefore lay aside any requirements of Sec. 458, Title 7, Code of Alabama 1940, in considering the point now argued.

Sections 474(1)–474(18), Title 7, Code of Alabama 1940, appearing as Article 6A, in said Title 7, provides a cumulative method for the taking of depositions.

Section 474(1), Title 7, in parts pertinent to this review, provides:

"Any party may take the testimony of any person, including a party, by deposition upon the oral examination for the purpose of discovery, or for use as evidence in the action or for both purposes. "

Section 474(4) provides that at the trial any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition, or who had due notice thereof.

Section 474(7) provides that a reasonable notice shall be given the other party of the time and place of the taking of the deposition, and the name and address of the person to be examined.

It is to be noted that no affidavit is required prior to the taking of a deposition under the provisions of Sections 474(1)–474(18).

On 3 June 1966, a due and proper notice was sent to counsel for petitioner by registered mail that the deposition of Jean Ruggerio would be taken at a specified time and place on 23 June 1966, in Berkeley Heights, New Jersey, before an officer authorized to administer oaths by the laws of New Jersey, for the purpose of discovery or for use as evidence.

The deposition was duly taken in accordance with the notice. The petitioner made no appearance, either by writing, by counsel, or in person.

Section 25 of Title 46, Code of Alabama 1940, found in Article 1 of said Title relating to the organization of the Bar of Alabama, provides that:

" * * * the evidence of witnesses residing outside of such county (county of residence of charged attorney) may be taken in the same manner *as provided by law for the taking of depositions in civil cases.*" (Par. and italics ours.)

Likewise Rule 19, Section B of the Rules Governing the Conduct of Attorneys, also provides for the taking of depositions "in all respects as provided by law."

Counsel for petitioner in brief argues that:

"There then exists serious doubt as to whether the Legislature could constitutionally make * * * Sec. 474(1), et seq., applicable to disbarment proceedings, and it is the position of defendant that to do so would violate his rights under Article 1, Section 6, of the Constitution of Alabama, 1901, and the Sixth Amendment, Constitution of the United States, as the same is made applicable to the State of Alabama by the Fourteenth Amendment."

■ This argument is succinctly answered by the following quotation from Ex parte Messer, 228 Ala. 16, 152 So. 244, a disbarment proceedings:

"It is well settled that the rules and principles of the law of evidence applicable to civil proceedings are also applicable to *quasi criminal proceedings;* that the defendant may be compelled to testify as a witness for the plaintiff, the testimony may be taken by deposition, and the failure of the defendant to testify may be commented on in argument. Smith v. State, 13 Ala.App. 411, 69 So. 406; Miller v. State, 110 Ala. 69, 20 So. 392; Attorney General v. Pelletier, 240 Mass. 264, 134 N.E. 407."

■ Both Section 25, Title 46, Code of Alabama 1940, and Rule 19, Section B, existed prior to the enactment of Section 474(1) et seq. Each refers only generally to the taking of depositions in the manner provided by law. Section 474(1) et seq., is general concerning the taking of depositions. It will be regarded as adopting by reference, not only the law in force at the time of its enactment, but even later leg-

islation if any, on the subject. See Carruba v. Meeks, 274 Ala. 714, 150 So.2d 195.

■ We hold that the Board did not err in denying petitioner's motion to suppress Mrs. Ruggerio's deposition.

■ Assignment of error VII asserts error by the Board in denying petitioner's objection to Maultsby Waller's appointment by the President of the Alabama Bar as a commissioner to take testimony in the proceedings against the petitioner. The basis of the objection to Mr. Waller so serving was that he was a member of the Alabama Bar.

The interest relied on to disqualify must be a pecuniary one, and be affected by the event of the suit. Ex parte Alabama State Bar Association, 92 Ala. 113, 8 So. 768, 12 L.R.A. 134. The Board did not err in overruling the objection to Mr. Waller to serve as commissioner to take testimony.

■ Assignment of error XIII relates to an alleged prejudicial argument made to the Board of Commissioners by Mr. Drayton Scott, representing the Bar, in the proceedings before the Board. Without passing upon whether Mr. Scott's argument exceeded permissible forensic boundaries, we note that it was stated by the presiding officer at the hearing that the Board had considered the matter and had voted to disregard the portion of the argument objected to, and sustained petitioner's objection.

To this, counsel for petitioner stated: "We will let it go at that."

In this state of the record, we find nothing to review. Assignment VIII we consider without merit.

Assignment of error IX is to the effect that the Board of Commissioners erred in overruling petitioner's motion to dismiss the complaint, as amended, against him.

Under this assignment, counsel for petitioner has argued a number of grounds assigned to the motion which we shall discuss in the order presented.

1. Rule 25, Section A, as amended, is invalid as being contrary to interpreted statutory law. Counsel for petitioner concedes that in order for a court of this state to have jurisdiction in divorce cases, one of the parties to the marriage must be domiciled in this state. Jennings v. Jennings, 251 Ala. 73, 36 So.2d 236, 3 A.L.R.2d 662.

However, counsel argues that in a number of cases (Lutsky v. Lutsky, 279 Ala. 185, 183 So.2d 782; Levine v. Levine, 262 Ala. 491, 80 So.2d 235, and Multer v. Multer, 280 Ala. 458, 195 So.2d 105), this court has denied relief to the party questioning the divorce because of laches or estoppel on the part of the questioning party.

Therefore, counsel contends, the presumption must be that a divorce decree is to all intents and purposes valid until otherwise determined by appeal and it is impossible to state with assurance whether any divorce decree is null and void until tested by appeal.

The fallacy of this argument is that Rule 25, Section A in no way departs from the applicable divorce statutes as to jurisdiction, nor the decisions thereunder, but reinforces these principles. Rule 25 Section A, as amended, was formulated by the Bar, and approved by this court in an effort to eliminate, or lessen, the scandalous "quickie divorce" racket with its local and national ramifications. It is an effort to regulate the ethical conduct of attorneys, and the validity or invalidity of a divorce decree, or the operation of laches or estoppel is beside the point. We find no merit in this contention.

2. Counsel argues that Rule 25, Section A, as amended, is violative of the due process and equal protection provisions of the United States Constitution. It is counsel's contention that the effect of Rule 25, Section A, as amended, is to unreasonably classify "divorce" attorneys separate and apart from other attorneys.

The rule attempts no classification. It merely condemns a practice already contrary to law. It makes crystal clear that no attorney will, in uncontested divorce cases, be permitted to practice fraud upon a court, his client, and society as a whole by asserting facts of jurisdiction when the attorney knows, or reasonably should know, that no such jurisdictional facts exist.

Counsel also contends that by recognizing the state's interest in divorce matters, the courts are thereby merely continuing the interest of some religious views as to the indissolubility of marriage, thereby imposing religious views in the form of law, in violation of the First Amendment of the United States Constitution.

The fact that society as a whole, and religions, may both have interests in the continuation of marriages by no means violates any provision for the separation of church and state.

The interest of the church is basically an interest in the sanctity of marriage as a holy bond, while the interest of the state is basically materialistic, i. e., support of the wife and children and not casting them upon society for support, though admittedly many decisions in passing recognize the spiritual aspects of the marriage bond.

3. Counsel argues that the Grievance Committee which preferred charges against the petitioner was unlawfully appointed, in that it was appointed by the President of the Bar, rather than by the Board of Commissioners.

Section 25, Title 46, Code of Alabama 1940, sets forth the broad powers of the Board of Commissioners. Paragraph (e)

of the Section authorizes the Board to appoint one or more committees to take evidence relating to complaints against attorneys. Paragraph (f) authorizes the Board to make rules and by-laws concerning the selection of committees and their powers and duties.

The Board of Commissioners on 5 April 1963, adopted a resolution that the members and terms of the Grievance Committee be fixed by the President. Such action by the Board was authorized by paragraph (f), supra. Authorizing the President to act in the premises merely permitted the President to advantageously perform for the Board a practical detail looking toward the administration of the duties cast upon the Board. No wrongful delegation of powers resulted in this situation.

■ 4. Lastly, counsel for petitioner argues under this assignment that the officers of the Alabama Bar, other than the Board of Commissioners, are without power to act because the members of the Bar must attend the annual convention of the Bar in order to vote for such officials.

The requirement that members of the Bar must vote in person at the annual meeting of the Bar is one well within the administrative powers of the Bar. That some members of the Bar must travel longer distances than others to attend such annual meeting, violates no constitutional right.

■ Assignment of error XI relates to the action of Mr. Waller, the Commissioner to take testimony in sustaining on 6 September 1966, petitioner's objection to the hearing being held in Montgomery County Courthouse, and thereupon continuing the hearing until 1:00 P.M., and transferring the same to the Elmore County Courthouse.

It appears that on 5 August 1966, Mr. Waller was duly appointed Commissioner to take testimony as to the complaints against petitioner, the hearing to be held at Montgomery County Courthouse on September 1966, at 10:00 A.M. The petitioner was served with notice of this hearing on 31 August 1966.

Petitioner and counsel appeared before Commissioner Waller at date set, 6 September 1966, and interposed an objection to the hearing in Montgomery County on the grounds petitioner was a resident of Elmore County. Appearing as a witness solely for the purpose of testifying as to his residence, the petitioner testified that he had maintained a law office in Montgomery County since 1962, though he had had his residence in Elmore County since 1961, and also had an office in his home. In the last election, he had voted in Elmore County. Commissioner Waller thereupon sustained petitioner's objection to the hearing being had in Montgomery County, and continued the hearing to 1:00 P.M., to be conducted in the Courthouse in Elmore County, some 18 miles distant. The petitioner had not subpoenaed any witnesses. At the beginning of the hearing in Elmore County, the petitioner objected to the hearing being had there.

Counsel for petitioner states in brief:

"This is a question of *power to act,* not a question of exercise of judicial power to determine whether or not prejudice to the defendant resulted."

Rule 13, Section B, provides that notice of hearing shall be given an accused attorney of the date fixed for the hearing at least five days prior to the date fixed. Notice of the hearing was given petitioner more than five days in advance.

Rule 15, Section B, provides that upon the day so fixed, the evidence shall be taken at the Courthouse of the county wherein the accused attorney resides.

The above provision is essentially a venue provision for the convenience of the accused attorney. Undoubtedly, it is a

matter that could be waived. It in no wise goes to jurisdiction in its true sense to conduct the hearing. The petitioner had subpoenaed no witnesses for the hearing. Because of his objection, the hearing was moved to Elmore County, for hearing later in the day. We find no probable injury to any substantial right of the petitioner in the action of Commissioner Waller in the premises.

Assignment of error I asserts that the Board of Commissioners erred in entering judgment of disbarment in that the legal evidence adduced is insufficient to support such judgment.

■ We have carefully read the record in this case and are clear to the conclusion that the legal evidence, and the reasonable inferences therefrom, presented to the Board, is ample in its tendencies to support the resolution of guilt entered under Charges five, six, seven, and nine, and to support the resolution of disbarment.

■■ As we stated in In re McKay, 280 Ala. 174, 191 So.2d 1:

"An attorney must be accorded due process in disbarment and disciplinary proceedings, and the requirements of due process are met when the attorney is served with charges or specifications reasonably informing him of the charges against him and the attorney is thereafter accorded a hearing with an opportunity to defend. See 7 Am.Jur., supra, Sec. 64.

"The above requirements of due process being met, formal and technical pleadings are not essential, nor do they have any place in a disbarment proceeding. In Re Fite, 228 Ala. 4, 152 So. 246; McCord v. State, 220 Ala. 466, 126 So. 873; Ex parte Thompson, 228 Ala. 113, 152 So. 229, 107 A.L.R. 671; Ex parte Grace, 244 Ala. 267, 13 So.2d 178."

Affirmed.

All the Justices concur, except LAWSON, J., not sitting.