## QUEENSBORO NAT. BANK OF CITY OF NEW YORK v. KELLY.

No. 258.

Circuit Court of Appeals, Second Circuit.

April 6, 1931.

See, also, 15 F.(2d) 395.

Samuel Perlo, of New York City, for appellant.

Ignatius A. Scannell, of New York City, for appellee.

Before L. HAND, CHASE, and MACK, Circuit Judges.

MACK, Circuit Judge.

In an action against the maker by the payee of a promissory note for $14,432.63, defendant answered that the consideration therefor was an assignment by plaintiff to him of certain bills of exchange aggregating $16,164.15; that the note was to be effective on condition that the bills were delivered to defendant, but that no delivery had been made; that, on the contrary, when at maturity defendant had tendered the amount of the note with interest, plaintiff had informed him that it was unable to deliver the drafts; that all or a greater number of the drafts had been paid prior to the assignment to defendant.

Of even date with the note, but whether before or after its execution is in controversy, a writing was signed by both parties (copied in the margin).[1]

It was stipulated at the trial that prior to the execution of the note some of the drafts had been paid by the drawees thereof to a Porto Rican bank, plaintiff's correspondent; that the moneys received had been remitted by it, $9,189.21 thereof to the drawer, Soamer Distributing Company, which deposited the checks with plaintiff, in its general account, and the balance, $1,067.51, directly to plaintiff.

The drafts had been issued in sets of two. This, however, is about all that on this record can be stated in respect to them. In other words, it is not clearly apparent (a) who the payee was, whether the drawer or plaintiff or the Porto Rican Bank; (b) whether they were delivered by the drawer to the plaintiff, and, if so, for what purpose; or (c) whether they were sent either by drawer or plaintiff to the Porto Rican bank, and, if so, whether the whole or only part of either the

[1] In consideration of the execution and delivery by William F. Kelly of a note for a term of ten (10) months in the sum of Fourteen Thousand Four Hundred Thirty-Two Dollars and Sixty-three Cents ($14,432.63) dated this day, the Queensboro National Bank of the City of New York hereby assigns and sells to William F. Kelly drafts of the Soamer Distributing Company, Long Island City, N. Y., aggregating the sum of Sixteen Thousand One Hundred Sixty-Four Dollars Fifteen Cents ($16,164.15) with the privilege to the said William F. Kelly, to take legal action in such cases as he may be advised in the name of the Queensboro National Bank of the City of New York at his own expense and without recourse to the Bank. The said note to bear interest.

It being understood, however, that in case the said William F. Kelly collects any monies on account of any draft or drafts hereby assigned, that that money shall be turned over to the Bank by the said William F. Kelly and such money turned over shall be in reduction of the said note and that the said William F. Kelly hereby assigns all such monies that may be collected on account of any draft or drafts hereby assigned.

The Queensboro National Bank of the City of New York hereby agrees not to press the Soamer Distributing Company for more than One Hundred ($100) Dollars per month of the $3300 (Thirty-three Hundred Dollars) the said Soamer Distributing Company owes to the Bank that is not secured and is not contained in the said $16,164.15 heretofore assigned.

In witness whereof the Queensboro National Bank of the City of New York has hereby caused its seal to be affixed and these presents to be signed by its President, and William F. Kelly has hereto set his hand and seal this fourteenth day of July, 1925.
Queensboro National Bank of the City of New York.
 By John La Duke, President.
  Wm. F. Kelly.
  [Seal.]
In the presence of:
  Samuel Perlo.

firsts or the seconds of exchange or both were so sent; (d) whether such drafts as were in plaintiff's possession at the time of the assignment were firsts or seconds or both, and whether they were originally payable to plaintiff or had theretofore been indorsed to it by the drawer or the Porto Rican bank as payee, or had been delivered to it without indorsement; and, if indorsed, what the nature of the indorsement was.

We deem it essential to point out this lack of clarity in the testimony in order that on another trial it may be corrected and the entire situation presented.

■■ Inasmuch as at the conclusion of the trial both parties moved for a directed verdict and submitted the cause to the court on a stipulation that neither would ask to go to the jury but that the court might direct a verdict, all doubts in respect to the testimony must for the purposes of the present appeal be resolved against the appellant. Some time after the submission, the trial judge rendered an opinion stating that a verdict would be directed in favor of the defendant, but he made no special findings of fact. The judgment from which the appeal was · taken, after reciting the stipulation and the granting of defendant's motion for a directed verdict, dismisses the complaint and awards costs to defendant. No exceptions were taken other than to the exclusion of evidence. In this situation, on this appeal, only errors of law in that respect may be considered. Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654; Sena v. Am. Turquoise Co., 220 U. S. 497, 31 S. Ct. 488, 55 L. Ed. 559.

The question thus presented for review is whether or not the court erred in refusing to admit parol evidence that defendant knew the drafts to be worthless pieces of paper at the time of the execution of the assignment and that the actual or main consideration for the note was an agreement between defendant, for a long time president. and thereafter chairman of plaintiff's board of directors, and his codirectors, to make good, in proportion to their stock holdings, certain of the bank loans, pursuant to the National Bank Examiner's direction that they be replaced because deemed by him unsafe. The relevancy of the rejected testimony is its tendency to negative the implication of any warranty by plaintiff as transferor of the drafts.

■ Although the drafts were drawn on Porto Ricans, as their assignment by plaintiff to defendant under the written document and their delivery either actual or constructive under the terms of that document or by the delivery of a paper listing them were completed in New York, the law of that state controls; if statutory, this court accepts the state court's interpretation, but, if not statutory, the federal court is not bound by the state court's decisions on the common law or the law merchant as applied to such a commercial transaction.

■ We are dealing with negotiable instruments; as heretofore stated, on the record before us, it is uncertain whether at the time of the transfer the drafts were order or bearer paper. This can be cleared up on the new trial. If it shall then appear that in plaintiff's hands they were bearer paper, the transfer is clearly within the provisions of the New York Negotiable Instruments Law (Consol. Laws, c. 38); they were "negotiated" within section 60 of that act. The implied warranties, if any, arising out of the transaction, will be those specified in section 115. If, however, it shall appear that they were then order paper, inasmuch as they were not indorsed by plaintiff, they were not in the strict sense of the term negotiated. The question then arises whether in these circumstances the Negotiable Instruments Law covers the transaction so that section 115 determines the implied warranties, or whether the transfer is to be dealt with as an assignment at common law. The importance of the matter is due to the conflict between Meyer v. Richards, 163 U. S. 385, 16 S. Ct. 1148, 41 L. Ed. 199, holding that the transferor warrants the instrument to be valid, and Littauer v. Goldman, 72 N. Y. 506, 28 Am. Rep. 171, holding that the transferor warrants only that he has no knowledge of any invalidity.

■ Section 79 of the New York Negotiable Instruments Law expressly governs the case of delivery, without indorsement, of order paper. Whatever the situation at common law, such a transfer vests the title of the transferor in the transferee, and the latter "acquires, in addition, the right to have the indorsement of the transferrer." This section further provides "but for the purpose of determining whether the transferree is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made." While, therefore, for the one specified purpose, actual indorsement is essential to complete the "negotiation," the apparent legislative intent was to make the negotiation effective for other purposes as soon as the right to have the indorsement placed thereon was acquired.

Section 115 uses a similar word, "negotiating." Narrowly interpreted, the applicability of this section might thereby be limited to order paper on which the qualified indorsement had actually been made. In our judgment, however, the legislative intent, evidenced by the provision of section 79, will be effectuated only by a more liberal interpretation,[2] so as to cover the transfer of order paper before as well as after actual indorsement. As between the immediate parties to the transaction and in respect to the warranties, if any, that the transferor gives to his immediate transferee, no question of holder in due course is involved. Whether the assignment be before or after maturity, for value or as a gift, title to the paper and the right to demand the indorsement vest in the transferee at once. It follows, therefore, that, whether the drafts be bearer or unindorsed order paper, plaintiff at the best warranted under section 115 only against its own knowledge and not against the fact of invalidity.

As the warranties, if any, are not expressed in the assignment document or in any writing, either on the drafts or outside of them, whether they were bearer or unindorsed order paper, the warranties are only such as the law implies; in these circumstances, there is no varying of a written instrument by parol evidence in the admission of testimony tending to negative the implication of any warranty. Smith v. Barner, 95 Or. 486, 188 P. 216. In that case, in some respects similar to the instant one, the court was unanimous on this point; the only difference between the majority and minority was whether parol evidence of the actual transaction and intention would be admissible if (what was not clear on the record before the court) it should appear on the new trial that the order paper had in fact been indorsed "without recourse" and not merely assigned and delivered. The minority in that case, as in Moody v. Morris-Roberts Co., 38 Idaho, 414, 226 P. 278, contended in well-reasoned opinions (approved by Chafee, Brannan's Neg. Instr. Law [4th Ed.] p. 609; see Llewellyn, 29 Yale Law Journal 102, at 104, note 11) that the words "without recourse" on the instrument itself do not expressly embody in writing the warranties implied under the provisions of statutes identical with section 115 of the New York act, and that therefore the admission of such evidence would not contravene the parol evidence rule. No such question, however, will arise here, for clearly, even if the drafts were order paper, they had not been indorsed at the time of their assignment.

The fact that the implied warranties of section 115 of the Negotiable Instruments Law are stated in absolute terms does not, in our judgment, preclude parol evidence of the transferee's knowledge of invalidity. Both under the law of sales of chattels (1 Williston, Sales §§ 219, 234) and under the law merchant before the N. I. A. (Baldwin v. Van Deusen, 37 N. Y. 487; Bell v. Dagg, 60 N. Y. 528; Coffman v. Allin et ux. Litt. Sel. Cas. [16 Ky.] 200; Beal v. Roberts, 113 Mass. 525; Porter v. Bright, 82 Pa. 441; Carroll v. Nodine, 41 Or. 412, 69 P. 51, 93 Am. St. Rep. 743), the purchaser's knowledge of defects, proven normally by parol evidence, negatives the implication of the usual warranties as to such defects. See Britton, "Liability of Transferor by Delivery and a Qualified Indorser," 40 Yale Law Jour. 215, 254, and 255, and cases cited. The tendered evidence of defendant's knowledge of the "worthlessness," that is, the invalidity, of the drafts by reason of their payment in whole or in part or the earlier negotiation of one of the sets and/or payment thereof, was therefore admissible to negative the statutory implication of a warranty by plaintiff; its exclusion was reversible error.

Proof of all the circumstances surrounding the transaction was likewise admissible to establish that these drafts were intended by both parties to be taken at defendant's risk without any warranty, irrespective of defendant's knowledge or lack of knowledge of specific defects. For this purpose, the offered proof of the parol agreement as an additional or even main consideration for the note should have been received; its exclusion, too, was error. Such evidence, if believed, tended to show that both parties regarded the drafts as worthless, and therefore intended no warranty to be implied. Clearly the assignment document did not in form or in fact express the entire understanding of the parties, as defendant himself asserts by pleading and offering evidence to show actual delivery of the drafts to be an express condition to payment of the note, although the document does not so provide. Moreover, its primary purpose was not to express a complete agreement between the parties. It is rather a grant, an assignment of the drafts, with a reservation of the right to apply collections thereon on defendant's

---

[2] Cf. Liberty Trust Co. v. Tilton, 217 Mass. 462, 465, 105 N. E. 605, L. R. A. 1915B, 144, broadly defining "negotiated" to constitute a payee a holder in due course.

notes; incidental thereto is plaintiff's unilateral promise to give the Soamer Company time on its unsecured indebtedness. Defendant's signature is attached thereto, but it contains no promise by him to execute a note; the note is merely recited as the consideration for plaintiff's assignment of the drafts and the extension of time.

If on the new trial the jury should disbelieve the rejected testimony, then, as heretofore stated, plaintiff's warranty is that prescribed in section 115 of the New York Negotiable Instruments Law, not that the paper was "valid and subsisting," but only that plaintiff as transferor "has no knowledge of any fact which would impair the validity of the instrument or render it valueless." This limitation of the warranty is also adopted in other uniform Acts.[3]

It will therefore not suffice for defendant to prove that the drafts or their negotiated counterparts had in fact been paid; in order to establish this breach of warranty that gives him a set-off against his liability on the note, he must prove plaintiff's knowledge of such payment. The third defense of payment of the draft is not a defense of failure of consideration for the note; there was no failure. The document passed title to the drafts and gave defendant the promise of time on the Soamer Company liability. But he may establish a set-off based on breach of warranty. It is to be noted that the third defense as pleaded fails to allege plaintiff's knowledge of the payments. This defect may, however, in the discretion of the trial court, be obviated by amendment. In any event, proof of knowledge that one or more drafts had been paid gives a set-off only to that extent; all liability on the note is not thereby ended. See Ryan v. Security Savings Bank, 50 App. D. C. 292, 271 F. 366; New York Negotiable Instruments Law, § 54.

In respect to the second defense of tender of payment by defendant and plaintiff's refusal to deliver the drafts, it is to be noted that the written tender made at maturity was not the tender as pleaded by him, conditioned only on delivery of the unpaid drafts in the sum of $16,164.15. There was added the further requirement, which was neither pleaded nor proved, that plaintiff also furnish proof "that neither the firsts nor seconds of exchange of said draft had been paid by the drawee." There was, however, no contractual or other obligation on plaintiff to furnish this proof as a condition to payment of the note.

For the errors in rejecting the offered testimony, the judgment must be reversed, and the cause remanded for a new trial.

---

[3] Sales of Goods Act, New York Personal Property Law (Consol. Laws, c. 41), § 117(c); Stock Certificates Act, Id. § 172(c); Warehouse Receipts Act, New York General Business Law (Consol. Laws, c. 20), § 128(c).