191 So.2d 1

### In the Matter of Donald McKAY, Attorney at Law.

### 3 Div. 174.

Supreme Court of Alabama.

Oct. 6, 1966.

Donald McKay (pro se) and Robert L. Cheek, Montgomery, for appellant.

David W. Crosland, Dist. Atty., Montgomery, contra.

PER CURIAM.

This is an appeal from a judgment and decree of Hon. William F. Thetford and Hon. Richard P. Emmet, Judges of the Circuit Court of Montgomery County, suspending the appellant, Donald McKay, from the practice of law for a period of one year.

The action of the circuit judges was based upon the provisions of Section 50, Title 46, Code of Alabama 1940, which pro-

vides that an attorney may be removed or suspended by the Circuit Court "[u]pon its being shown, to the satisfaction of the court, that he has been guilty of any deceit or wilful misconduct in his profession."

The basis of the proceedings below was the appellant's filing and processing three divorce cases in which it was alleged that the complainants in each case were bona fide residents of Montgomery County, Alabama; that in truth and in fact the complainants in neither case were residents of Montgomery County, Alabama, which fact was known or should have been known to the appellant.

The record discloses that on 18 June 1964, Judge Thetford called Mr. R. E. Steiner III, Chairman of the Grievance Committee of the Alabama Bar Association, and requested that the Grievance Committee investigate certain divorce cases filed by Mr. McKay in the Circuit Court of Montgomery County, Alabama. The Grievance Committee of the Bar Association was to meet the next morning in the courthouse in Montgomery, Alabama. Mr. McKay was contacted and advised of the meeting. He appeared before the Grievance Committee the next morning.

Mr. McKay's participation in three divorce cases was being checked into, namely, Johnson v. Johnson, Ogden v. Ogden, and Trimm v. Trimm.

Mr. McKay was informed that the Committee was investigating the above three cases and that from information before the Committee it appeared that the complainants were not bona fide residents of Montgomery County, Alabama, and that Mr. McKay knew, or had reasonable cause to believe, such to be the fact. Mr. McKay was informed that he did not have to make any statement, but the Committee would hear any statement that he wished to make. Mr. McKay replied that he desired to make a statement in regard to his handling of these three cases.

In regard to the Johnson case, Mr. McKay stated that Mr. Johnson had come to his home to interview him and that Mr. Johnson lived in Capitol Heights or in Dalraida (sub-divisions of Montgomery), and worked for the Continental Can Company; that Mr. Johnson was then headed for Holland to sell heavy equipment or road moving equipment.

Mr. McKay further stated that he did not know, nor had he ever seen Mrs. Johnson, or Mrs. Ogden, but that he had contracts of employment with them; that he had filed each of the complaints in the Circuit Court of Montgomery County, Alabama, in the name of the husbands and that he had been retained by each of the complainant husbands. Mr. McKay stated that the Johnson case had been referred to him by Gina C. Lavin, a WAF with the Air Force stationed at either Maxwell or Gunter Field.

The contract of employment of Mr. McKay by Mrs. Johnson disclosed that it was acknowledged before a Notary Public by the name of Gina C. Lavin on 9 June 1964, in Torrington, Connecticut.

The waiver and answer filed by Mrs. Johnson shows that Gina C. Lavin was one of the persons witnessing Mrs. Johnson's signature.

When Mr. McKay exhibited to the Committee his contract of employment with Mrs. Johnson, he stated that he was in error in his original statement to the Committee that Mr. Johnson was referred to him by Gina C. Lavin and that he did not know Gina C. Lavin.

Jane Ellixson, manager of the rooming house at 536 So. Lawrence Street, Montgomery, Alabama, testified that Leonard D. Johnson rented a room in the boarding house on 11 June 1964, and paid rent thereon for one week.

This witness further testified that Trimm had registered at the boarding house on 7 June 1964, and paid $10.00 for the rent of a room for one week, and Ogden had registered on 16 June 1964, and likewise had paid $10.00 as rent for a room for one week.

On cross examination this witness testified that Johnson had told her that he was a Lieutenant in the Air Force and was in from Holland.

When Mr. McKay was asked whether he had been in touch with Johnson after the divorce, he replied that he did not know where Johnson was other than that he was headed for Holland when he left Montgomery.

In reference to the Ogden case, Mr. McKay told the Committee that Ogden was an employee of the Wire Tyer Corporation of Paterson, New Jersey, which company made wire bindings used to wrap newspapers. He said that Mr. Ogden was living somewhere in a boarding house in Montgomery, but he did not know his address here. When Mr. McKay was asked if to his knowledge Ogden had contacted any one in Montgomery or any of the newspapers, Mr. McKay replied that he didn't think that was the kind of work Mr. Ogden did but that Ogden was going to set up some kind of service operation for his corporation somewhere between New Orleans and Atlanta. Mr. McKay's contract of employment with Ogden was on a printed form with the Notary acknowledgment being printed for use in the state of New York. However, the word "Jersey" had been typed over the printed word "York" on this form.

In reference to the Trimm case, Mr. McKay told the Committee that Trimm lived in Montgomery at an apartment on Felder Avenue either in the old Durr home or the old Whitfield home. When Mr. McKay was asked where the Committee could get in touch with Mr. Trimm, he informed the Committee that Trimm was connected with a credit life insurance company operating between Chicago and Miami.

After this session before the Grievance Committee, Judges Thetford and Emmet were notified that the parties would be available for conference that afternoon if suitable and the Judges replied that they would be available.

In the meantime Mr. McKay had notified the Committee that Ogden and Trimm would be available at the conference with the judges.

At this conference the Committee reported the results of their investigation and conversation with Mr. McKay who was present with counsel. We will not again repeat the report of the Committee's findings which were recounted to the judges at the afternoon conference other than to note that Trimm testified that he had told Mr. McKay that he was flying into Alabama to get a divorce and had his plane reservations to fly out of Alabama Friday afternoon. Trimm stated he was president of the First American Acceptance Corporation which concern was in receivership. Upon the court asking him what he was doing in Montgomery, he replied he was here to start a new life insurance company, but after some interrogation, Trimm admitted that under Alabama law $250,000 was required to start a life insurance company, and that his Miami company was in receivership.

When it was pointed out to Mr. McKay that neither Trimm nor Ogden had ever lived or rented an apartment in the old Durr or Whitfield homes, Mr. McKay made no reply to this discrepancy.

At the conclusion of this conference with the judges, Mr. McKay was informed by them that he was guilty of fraud and deceit in the handling of these cases and that the divorce decree in the Johnson case would be set aside and that complaints in the Ogden and Trimm cases would be dismissed on the grounds that none of the parties in this litigation were bona fide residents of the state of Alabama.

The court thereupon entered a decree suspending Mr. McKay from the practice of law for one year.

Thereafter, this decree was set aside on motion of Mr. McKay on the grounds that he had not been served with any charges or specifications prior to the conference or hearing before the two Circuit judges. At

the same time the judges directed the State's attorney to prepare specifications against Mr. McKay.

Thereafter, a complaint was filed by the State's attorney containing three specifications charging respectively that McKay, a duly licensed attorney, was guilty of deceit and willful misconduct in his profession in that in each respective case (Johnson, Ogden, and Trimm), it was averred that the complainant was a bona fide resident of Montgomery County, Albama, when, in truth and in fact the complainant was not such bona fide resident, which fact was known to McKay.

The above complaint was filed on 11 September 1964. It was not sworn to.

Thereafter, on 28 September 1964, the State's attorney filed another complaint against Mr. McKay identical with the one filed on 11 September 1964, except that this latter complaint was verified by the State's attorney.

Each of the above complaints was duly and timely served on the appellant.

During the pendency of these proceedings before the judges below, a number of motions and pleas were filed by the appellant. On 28 September the appellant filed a motion to vacate the order of 1 September setting aside the original decree of 9 July suspending the appellant from the practice of law for one year. On 29 October the appellant filed a motion to set aside the order of the court entered on 29 September vacating its original decree on the ground that the decree of the judges was not filed until 27 October. On this same day the appellant filed a demand for a jury trial which, after hearing, was denied. The appellant then on 29 October filed a plea in abatement with a jury being demanded for hearing on such plea. On 12 November the appellant filed a plea to the jurisdiction of the judges, and also a motion to quash. A jury was demanded in each instance. On 13 November the appellant filed a motion to strike the complaint filed on 28 September, a jury being

demanded. On this same day the appellant also filed a plea of former jeopardy and plea of res judicata, and an answer. On that same day a demurrer was filed to the answer, and a hearing was entered into on the merits.

At this hearing the files in the Johnson, Ogden, Trimm cases were introduced. Mr. Steiner, and Mr. Sam Pipes III, a member of the Grievance Committee of the Alabama State Bar, and who had been present at the appearance of Mr. McKay before the Grievance Committee, gave testimony as to the statements by Mr. McKay during his appearance before the Grievance Committee. These matters have already been set out in substance and will not here again be repeated. We do note, however, that in the course of his testimony Mr. Steiner testified as to the statements by Ogden and Trimm when they appeared before the two judges following the meeting of the Grievance Committee. In this regard, Mr. Steiner's testimony was to the effect that Ogden and Trimm had testified that they were flying into Montgomery for the purpose of securing a divorce and that Trimm testified he had his plane reservations to leave Alabama Friday afternoon.

Mr. Steiner further testified that in the interim between the meeting of the Grievance Committee and the appearance before the judges, he had checked by telephone with the local Water Works Board, Power Company, and Telephone Company, and each business reported that neither Johnson, Ogden, nor Trimm had ever contracted for services from such utility companies.

The appellant argues that because there were no traverses filed to his special pleas, the judges should have entered a judgment of nil dicet, or a judgment non pros in his favor.

■■■ The question for determination in disbarment or disciplinary cases is the fundamental one of whether an attorney who is charged with professional dereliction should be permitted to continue in his office. Basically, the proceeding is an in-

quiry into the conduct of an attorney to determine whether action should be taken by a court to protect the public or the dignity of the court. See Thornton on Attorneys at Law, Vol. 2, Sec. 865, and 7 Am.Jur.2d Attorneys at Law, Sec. 60.

■ An attorney must be accorded due process in disbarment and disciplinary proceedings, and the requirements of due process are met when the attorney is served with charges or specifications reasonably informing him of the charges against him and the attorney is thereafter accorded a hearing with an opportunity to defend. See 7 Am.Jur., supra, Sec. 64.

■ The above requirements of due process being met, formal and technical pleadings are not essential, nor do they have any place in a disbarment proceeding. In Re Fite, 228 Ala. 4, 152 So. 246; McCord v. State, 220 Ala. 466, 126 So. 873; Ex parte Thompson, 228 Ala. 113, 152 So. 229, 107 A.L.R. 671; Ex parte Grace, 244 Ala. 267, 13 So. 178.

As stated in McCord, supra, in reference to the plea in abatement filed in that case:

"The court is still virtually a party, knows its own record, and may be relied upon to protect an attorney under charges from unnecessary harassment. We find no authority or precedent for the plea in abatement in a cause of this character."

■ The specifications and charges filed by the State's attorney were sufficient to reasonably have informed the appellant of the matters with which he was charged. His defense thereafter should have been directed toward showing that the charges against him were untrue, or that if true, they did not constitute grounds for disbarment. We hold that the judges below did not err in overruling the technical pleas and motions filed in the proceedings below.

■ Appellant also contends that the judges erred in denying his numerous demands for jury trial both on the merits, and as to the various pleas and motions, filed by him.

At common law courts possessed the inherent right and power to discipline attorneys as officers of the court and no right to a trial by jury existed. Nor does Article 1, Section 11, Constitution of Alabama 1901, impel a jury in disbarment proceedings. Ex parte Thompson, 228 Ala. 113, 152 So. 229, 107 A.L.R. 671. While in times past the precursors of Section 50, Title 46, Code of Alabama 1940, did provide for a jury trial in disbarment proceedings by a circuit judge, no such provision is contained in the present statute (Section 50, supra). The act to adopt a code of laws for the State of Alabama specifically provides that the provisions of such Code "shall govern completely, as far as a statute can, the subjects to which it relates." See General Acts of Alabama 1939, page 995, Act No. 628, Approved 2 July 1940. Thus today, there is no statutory provision for a jury trial in disbarment proceedings, whether processed under Section 50, or under the alternative method of proceedings before the Commissioners of the Alabama State Bar. McCord v. State, supra; In re Fite, supra; Ex parte Messer, 228 Ala. 16, 152 So. 244.

No error resulted from the denial of the appellant's various demands for a jury trial in the proceedings below.

Counsel for appellant contends that the court below erred in permitting the witness Steiner to testify, over defendant's objections, as to the statements made by Ogden and Trimm relative to flying to Montgomery to obtain a divorce, etc., and that they told Mr. McKay of such.

Counsel contends that the testimony of Ogden and Trimm was given at a former trial (the first hearing or conference before the judges) and as such was inadmissible in the absence of a predicate to the effect that such testimony was given at a former trial, under oath, before a tribunal having authority to take testimony, under

circumstances offering the opportunity for cross examination, and without a showing as to why the witness in the former trial was not present in the immediate trial.

Counsel for appellant also contends that error to reversal resulted in permitting the witness Steiner to testify that in the interim between the proceedings before the Grievance Committee and the first hearing or conference before the circuit judges, he had contacted the three utility companies who had reported to him over the telephone that neither Johnson, Ogden, nor Trimm were customers of either company.

■ We pretermit consideration of the two above points, for the doctrine of our decisions is that in a case tried before a judge without a jury, the introduction of illegal evidence does not require a reversal if the remaining legal and material evidence is uncontradicted and is sufficient to support the judgment rendered. First National Bank of Talladega v. Chaffin, 118 Ala. 246, 24 So. 80; Pope v. Howle, 227 Ala. 154, 149 So. 222; Liberty National Life Insurance Company v. Harrison, 274 Ala. 43, 48, 145 So.2d 219.

■ If the evidence of Steiner relative to the statements of Ogden and Trimm made before the judges at the first hearing, and Steiner's testimony of the result of his checking with the three utility companies be laid aside, there yet remains ample evidence to the effect that neither Johnson, Ogden, nor Trimm, were bona fide residents of Montgomery County, and that McKay knew they were not.

True, that in support of allegations in each complaint there was filed an affidavit by each complainant containing a bald statement that he was a bona fide resident of Montgomery County, Alabama. The material issue in the proceeding below was whether the appellant practiced fraud and deceit on the court in filing the papers in the divorce suits when under the reasonable inferences of the evidence under his own statements to the Grievance Commit-

tee, he knew the complainants were not such bona fide residents.

Further, in the hearing below, nor in fact in any of the proceedings did the appellant testify or present any evidence tending to contradict the proof offered against him on the material issues. His evidence consisted largely in the introduction into evidence of the records in several other and different divorce actions had in the circuit court, with the inference or innuendo being that such cases were "quickie" divorces. Such evidence was immaterial and irrelevant to the issues in the present proceedings.

■ Disbarment proceedings are neither civil nor criminal, but are sui generis. In their criminal aspect they are at most quasi criminal. The failure of an attorney to testify in such proceedings may be commented on in argument. Ex parte Messer, 228 Ala. 16, 152 So. 244. As a corollary, the failure of an attorney to testify in his own defense may be considered in weighing the evidence against him. 7 C.J.S. Attorney and Client § 33b and authorities cited thereunder.

In brief counsel for appellant asserts that while the decree below resulted from appellant being found guilty of unprofessional conduct under the provisions of Section 50, Title 46, supra, "the actual thrust of gravamen of the charges filed was for violation of Rule 25, Section A, of the Board of Commissioners of the Alabama State Bar." We would note that while Rule 25 was promulgated by the Board of Commissioners, under the authority granted under the provisions of Section 25(c), Title 46, Code of Alabama 1940, empowering the Board of Commissioners to formulate rules governing the conduct of all persons admitted to practice, subject to the approval of this court. This court did approve Rule 25 as promulgated by the Board of Commissioners on 23 October 1961.

Counsel then proceeds to argue the constitutionality of Rule 25. There is no need

to consider this argument since clearly the proceeding's below were solely for violation of Section 50, Title 46, Code of Alabama 1940, and the constitutionality of Rule 25, supra, is not an issue in this appeal.

Counsel for appellant has filed a lengthy brief and argument, with many propositions of law and voluminous citations of authority. We have not written to each and every point in the order presented for we are clear to the conclusion that the points discussed above necessitate the conclusion that this order and decree is due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, COLEMAN and HARWOOD, JJ., concur.