248 So.2d 130

**In the Matter of K. C. EDWARDS.**

3 Div. 419.

Supreme Court of Alabama.

May 6, 1971.

William H. Morrow, Jr., Montgomery, for respondent.

McCollough & McCollough, Birmingham, for petitioner.

HEFLIN, Chief Justice.

This matter is before this Court for review of a Judgment of Disbarment of the Board of Commissioners of the Alabama State Bar finding petitioner guilty of certain charges preferred against him by the Grievance Committee of the Alabama State Bar and disbarring him as a practicing attorney at law.

As originally filed the complaint against petitioner contained three charges. The

complaint was later amended to contain four additional charges.

■ Charge One charges petitioner with violating, or failing to comply with, Rule 16, Section A, of the "Amended Rules Governing the Conduct of Attorneys in Alabama" (hereinafter referred to as "Rules") in that on March 30, 1967, petitioner did submit to the Circuit Court of the Tenth Judicial Circuit a divorce case styled John M. Buck v. Dianne J. Buck, Case No. 146–748, wherein the bill of complaint and deposition of complainant represented to the court that the complainant and respondent were bona fide residents of the State of Alabama, when in truth and fact, petitioner knew said representations to the court to be false.

Rule 16, Section A, supra, provides as follows:

"No person heretofore or hereafter admitted to practice law in Alabama, shall * * *

"16. Introduce or offer to introduce any testimony which he knows to be false or forged."

Charge Two alleges that petitioner violated, or failed to comply with, Rule 25, Section A, in said Buck divorce case. Charge Three avers that petitioner violated, or failed to comply with Rule 36, Section A, of the Rules by his acts in connection with the above-referenced Buck divorce case.

Rule 25, Section A, provides:

"25. No person heretofore or hereafter admitted to practice law in Alabama shall:

"(a) Knowingly or wilfully make any false representations of fact to any judge, court, or jury to induce a favorable action. or ruling by either;

"(b) File or prosecute or aid in the filing or prosecution of any suit, cross bill, or proceeding seeking a divorce in Alabama as attorney or solicitor for a complainant or cross complainant therein or serve as referring or forwarding attorney for such complainant or cross complainant with knowledge or reasonable cause to believe that neither party to such suit, cross bill, or proceeding is at the time of the filing of the bill of complaint or cross bill of complaint therein, a bona fide resident of the State of Alabama;

"(c) While acting as attorney for either party in any suit for divorce in any Court in Alabama represent to any Court or conspire with any party, attorney, or person to represent to the Court that either party to such suit is a bona fide resident of Alabama, knowing such representation to be false."

Rule 36, Section A, provides:

"36. No person licensed to practice law in the courts of the State of Alabama shall be guilty of any conduct unbecoming an attorney at law."

Charges Four through Seven charge, respectively, petitioner with violating, or failing to comply with, Rule 16, Section A; Rule 25, Section A; Rule 33, Section A; and Rule 36, Section A. These charges are based on his actions in thirteen other divorce cases, the styles of which are annexed to the charges, submitted to the Circuit Court of the Tenth Judicial Circuit, in that petitioner knew that neither the complainant nor respondent was a bona fide resident of the State of Alabama, and that the addresses of the parties shown on the pleadings as required by the rules of said court were known by petitioner to be false.

Rule 33, Section A, provides as follows:

"No person heretofore or hereafter admitted to practice law in Alabama, shall * * *

"33. Be guilty of any deceit or wilful misconduct in his profession."

Petitioner demurred to each of the charges against him and then, with respect

to each charge, answered that he was not guilty of the conduct alleged therein.

A commissioner was appointed and testimony taken at the Jefferson County Courthouse on December 6, 1968.

The Board of Commissioners of the Alabama State Bar, meeting in Executive Session on May 2, 1969, adopted resolutions finding petitioner guilty of Charges One, Two, Three, Four and Six; not guilty of Charge Five; and dismissing Charge Seven. The Board then entered a judgment of disbarment as to each of Charges One, Two, Three, Four and Six.

The evidence in the Buck divorce revealed that the petitioner Edwards, as the solicitor for John M. Buck, filed a bill of complaint that listed Mr. Buck's address as Route 1, Dora, Alabama, and the address of Dianne J. Buck (the wife-respondent in that case) as being in Irondale, Alabama.

Circumstantial evidence showed that there was no record of an Alabama driver's license for either party and there was no record that either had ever been a registered voter in Jefferson County. There was no record of electric service for the address of Mr. Buck.

Mrs. Buck, in her deposition taken in Massachusetts, testified that she had accidently learned of the entry of the Alabama divorce decree, which divorced her from her husband, when a copy of the same fell from Mr. Buck's brief case; that, thereafter, she contacted Judge William C. Barber of Birmingham, Alabama, who had signed the decree; that following said contact she received a copy of the court file; that she discussed the matter with Mr. Buck; and that she and her husband then joined in an action to set aside the final decree of divorce.

The said decree of divorce was entered by Judge Barber on March 30, 1967 and was set aside on July 11, 1967 on motion of both parties.

Mrs. Buck's testimony revealed that she was married to John M. Buck in January, 1946; that they are the parents of a 17-year-old daughter; that Mr. Buck was a civilian pilot; that Mr. Buck had formerly been in the Air Force; that they had lived together continuously as husband and wife except for those periods when his Air Force assignments would not permit his family to accompany him.

She gave evidence that Mr. Buck was not a bona fide resident of the State of Alabama except for a ten-week period some 16 years before that date when he had been stationed in Alabama while in the Air Force. She testified that she had never resided in Jefferson County, Alabama, and her residency was in Barnstable, Massachusetts. She stated that no separation had taken place between her husband and herself on October 16, 1964, as alleged in the bill of complaint, and that she and her husband were living together in Barnstable, Massachusetts at that time. She further stated that the averment in the bill of complaint that "there were no children born of the marriage" was untrue. The Answer and Waiver filed in the Alabama proceedings was presented to the witness and she was asked if she had signed such a paper, to which she replied that she had signed a blank paper at her husband's request but that she had never signed anything captioned and containing the matter set forth in said Answer and Waiver.

The guilty finding under Charge 4 involved the introduction of testimony which the accused attorney allegedly knew to be false. The resolution of guilty under Charge 6 concerns deceit or wilful misconduct in the profession. Both charges are centered around the alleged falsifying of the places of residency of the parties in thirteen divorce cases. Assignments of error 3 through 7 are based upon the lack of sufficient legal evidence to support the Board's findings of guilty with respect to the individual charges against petitioner. The last assignment of error (No. 8) is based upon the lack of sufficient legal evi-

dence to support the Board's Judgment of Disbarment.

Mr. Erskine Lindsey had been Deputy Register in Chancery for the Tenth Judicial Circuit for approximately six years prior to becoming Register, a position he had held for a year prior to the hearing. He produced and identified fourteen (14) original court files and fourteen (14) pages from the consolidated Docket and Fee Book (including the Buck case). Said court files listed petitioner, K. C. Edwards, as attorney of record for the complainant in each case. These documents were offered in evidence as exhibits.

The court files reflected that a specific address in Jefferson County, Alabama, for each complainant was contained in the bill of complaint in each of the fourteen (14) cases and a like address appeared upon the docket sheet for each case. The addresses of the respondents, with the exception of Sarah Elizabeth Gulledge, also appeared in said files.

The court file styled William Victor Gulledge v. Sarah Elizabeth Gulledge, Case No. 147-078, indicated that a cost bill had been mailed to William Victor Gulledge at the indicated address, 4009 37th Place, No., Birmingham, Alabama, and had been returned by the post office department with the notation "No Such Number."

On cross-examination, the witness testified that the respondent's address in the Gulledge case was unknown and that service was obtained by publication. The bill of complaint was filed on April 21, 1967, and the final decree rendered on July 3, 1967. The witness further stated that where an attorney guarantees cost he is first notified; if costs are not then paid, a cost bill is sent to the client. The costs in the Gulledge case were paid by petitioner on July 7, 1967, and the envelope which had been mailed to William Victor Gulledge was returned on July 18, 1967. The witness further testified that approximately 2400 divorces are obtained in Jefferson County annually; that a fairly large number of cost bills are returned for various reasons; that the postal department notation "No such street number" is not uncommon.

Mr. Bankhead Bates, Chief of the Drivers' License Division, State of Alabama, whose office maintains records indicating the names of all persons who presently have or have ever had an Alabama driver's license, testified that said records indicated that one William Victor Gulledge had been issued a driver's license with address given as Leeds, Alabama; that a warning ticket gave the licensee's address as Route 1, Helena, Alabama; and that two arrest tickets dated October 6, 1953, indicated an adddress of 1007 12th Street, South, Birmingham, Alabama. The driver's license record of one William Victor Gulledge, Jr., noted a current address as Route 1, Helena, Alabama, and the records indicated another address as 2024 Rocky Ridge Road, Birmingham, Alabama.

There was a driver's license record of one Robert Emmett Keene with addresses at 1501 Darwood Drive, Mobile, Alabama; 5428 10th Street, Birmingham, Alabama; and 418 West Vista Drive, Mobile, Alabama. (The address for Keene in his divorce case file was 206 Airport Hills, No., Birmingham, Alabama.)

Of the remaining twenty-six names of the parties to the fourteen divorce cases listed in the charges, there existed no record of an Alabama driver's license for any of the parties thereto.

The witness then stated that the fact that the addresses of William Victor Gulledge, Sr. and Jr., and Robert Emmett Keene as indicated in their driver's license records were different from those appearing in the court files did not mean that the parties did not live at such addresses. The witness also stated that licensees seldom advised the Department of Public Safety of address changes until such time as they applied for renewal of their licenses. He further stated that military personnel sta-

tioned at Maxwell Field were not required to have Alabama drivers' licenses. If any of the other twenty-six parties to the divorce proceedings had had an Alabama driver's license in the last five years, the records of the Department of Public Safety would so indicate.

Billy Rex Henderson was Division Auditor of the Birmingham Division of the Alabama Power Company. His office maintains records of every address served by the Alabama Power Company, the name of the subscriber the period during which service was furnished, and the amount owed by the subscriber. Records are kept under the control and supervision of the witness in the ordinary course of business. Mr. Henderson had searched the records of the Alabama Power Company to determine if service had been given to certain specific addresses (those taken from the fourteen court files), and the names of the persons furnished such service at such addresses from January 1, 1965.

Of the twenty-six names with addresses given, the witness stated that the records of the Alabama Power Company indicated either no electrical service to the given address, or service to a person other than the party named in the particular court file.

Of the twenty-eight parties to the fourteen divorce actions, there were seventeen addresses with no service to anyone; nine addresses with service to a person other than that one named; and two names with no specific address given in the court file.

It was brought out that the fact that the Alabama Power Company had no record did not necessarily mean that no such address existed. A bill might be rendered in the name of one person, although another lived at the address. On occasions occupants will move and allow their successors to continue service in their name. The records for any address would only indicate to whom the bill was rendered, and not necessarily the name of the actual occupant.

Nell Hunter had been a member of the Board of Registrars of Jefferson County for the past five years and chairman for one year and two months. A voting record consists of name, residence address, date of birth, date of registration, and place of voting. The files contain the name of every person who has ever registered to vote in Jefferson County. None of the twenty-eight persons named as parties in the fourteen divorce cases had ever been a registered voter in Jefferson County.

Helen Catherine Binzel was Executive Secretary of the Birmingham Bar Association and law librarian. This witness had checked Birmingham city and suburban directories for the years 1965 through 1968 for the names and addresses of the twenty-eight parties to the fourteen divorce cases.

The 1965 and 1967 city directories listed one William Victor Gulledge as the husband of Sarah Elizabeth Gulledge with an address as R.D. 1, Box 86, Helena, Alabama. No such address as 4009 37th Place, North, Birmingham, Alabama, as indicated in the court file, was located.

The same directories listed a Donna June Hallman as the wife of Macie Hallman, with an address of Odenville, Alabama, in the 1965 directory, and an address of 3112 Boise Avenue, S.W., in the 1967 directory. (Donna June Hallman—3112½ Bosie Ave., S.W., and Macie Hallman—1724 Denson Ave., S.W., both in Birmingham, was the way their names and addresses were listed in their divorce case.)

The 1965 and 1967 directories listed a Robert E. Keene as the husband of Emily B. Keene with an address of 5428 South 10th Court, Birmingham, Alabama (In the divorce case file, the wife of Robert Keene was listed as Mary Marie Keene, residing at 336 Ave. F, Pratt City.)

The witness could find no other names in the directories similar to those of the parties in the fourteen divorce cases. A summary of her findings as to each name

and address was offered in evidence as Exhibit U.

The witness testified only to what the directories revealed and not from personal knowledge. She was unfamiliar with the method by which the directories were compiled. In some cases, the directory would bear the notation "No Return" at a particular address.

She testified about a series of letters which had been mailed to the parties in the divorce cases at the addresses indicated in the court files, which were returned by the post office department with various notations. These letters were offered in evidence.

Thomas Hyland, Assistant Treasurer, Alabama Gas Corporation, testified as to records of that company containing addresses, names and account numbers, from November, 1966. Of the twenty-eight names furnished the witness with addresses as indicated in the court files, sixteen addresses indicated no record of any gas service; eight addresses indicated gas service, but to a person other than the party to the divorce action; and one address indicated the presence of a meter, but no service. No address was furnished for one name, and two addresses were not in the franchise area of Alabama Gas Corporation. The witness did not testify that there were no residences at the addresses furnished, but only that there was no record of gas service at those particular addresses.

The testimony of Mrs. Buck, plus the circumstantial evidence, was certainly sufficient for the triers of facts to base their guilty findings and judgment of disbarment under Charges One, Two and Three.

The following general statement of law is found in 29 Am.Jur.2d, Evidence, Section 265:

"In many instances facts can be proved only by circumstantial evidence. Such evidence is usually the only means of proving intent, *knowledge,* fraud or illicit sexual relations." (Emphasis supplied.)

See also: Gantner & Mattern Co. v. Hawkins, 89 Cal.App.2d 783, 201 P.2d 847; Queensboro National Bank of City of New York v. Kelley, (C.A. 2), 48 F.2d 574, 87 A.L.R. 1172, cert. den. 284 U.S. 620, 52 S.Ct. 9, 76 L.Ed. 529; Masterson v. Harris County Houston Ship Channel Nav. Dist., 15 S.W.2d 1011, 67 A.L.R. 1324.

The sum total of the testimony of circumstantial evidence by these witnesses indicated in most instances that there was no record of an Alabama driver's license in the name of the divorce litigants; no record of electric service at said listed address or to said person; that said parties were not registered voters in Jefferson County; that the city directories failed to list the names of said parties or in a few instances where the name appeared (such as William Gulledge), such name had a different address; that the letters which were mailed to all of the parties at their listed addresses were returned, and in most instances the postal department indicated that there was no such street address or that the addressee was not known at the address given; and that there was no record of natural gas service at each address or if there was a record of gas service at said address, it was in the name of a different person.

The cumulative effect of such circumstantial evidence was sufficient to allow the triers of facts to conclude that falsification and deceit concerning the addresses of the parties in the divorce actions had been presented to the Judge of the Tenth Judicial Circuit in said thirteen divorce cases.

■ In assignments of error 1 and 2, petitioner questions whether the hearing provided for by Rule 18, Section B, Rules, and the hearing afforded petitioner herein under the said rule, provides an accused attorney with sufficient opportunity to defend so as to meet the requirements of

procedural due process. Rule 18, Section B, supra, provides as follows:

"In the taking of testimony by the Grievance Committee of the Board or by a Commissioner, as herein provided, or by the Board, it shall not be required or necessary that objection be made to any evidence which may be offered by either party, but the Board shall consider only such evidence as is, in its opinion, relevant, material, or competent and it shall not consider any testimony which, in its opinion, is irrelevant, immaterial or incompetent."

The petitioner would appear to concede that Rule 18, Section B, supra, is substantially the same as Section 372(1), Title 7, Code of Alabama 1940, which states as follows:

"In the trial of equity cases in the circuit court, or other courts of competent jurisdiction, in this state it shall not be required or necessary that objection to be made to any testimony or evidence which may be offered by either party, and on the consideration of such cases the court shall consider only such testimony and evidence as is relevant, material, competent and legal, and shall not consider any testimony or evidence which is irrelevant, immaterial, incompetent or illegal, whether objections shall have been made thereto or not, and whether such testimony be brought out on direct, cross or re-direct examination, or is hearsay. On appeal the supreme court shall consider only such testimony as is relevant, material, competent and legal and neither court shall be required to point out what testimony or evidence should be excluded or not considered. Either party, on submission, shall have the privilege of calling attention to any testimony or evidence which is deemed objectionable. If specific objection be made to any evidence and a ruling made thereon by the trial court, this statute shall not apply to such evidence."

In brief, petitioner, although apparently conceding the applicability of Rule 18, Section B, supra, to these proceedings, challenges the validity thereof as denying procedural due process requirements.

In consideration of said Rule 18, Section B, and said Section 372(1), Title 7, Code 1940, one should bear in mind the following:

1. The triers of facts, whether chancellors or commissioners, are learned in the law.

2. A party is not penalized because of his failure to object to proffered testimony which is irrelevant, immaterial or incompetent. There is no waiver of any rights.

3. Although there is no penalty for failure to object, a party is given every opportunity to object.

4. The failure of a judge (in this instance, the commissioner presiding at the taking of testimony) to rule on an objection duly made does not alter the fact that only relevant, material and competent evidence may be considered in the determination of the cause, and in the present case this applies to both the Board of Commissioners and the Supreme Court of Alabama.

In the case of Redwine v. Jackson, 254 Ala. 564, 49 So.2d 115, this Court held that where a party interposed objection to testimony, the trial court's failure to expressly rule on the objection did not operate as a waiver of the objection and did not require the Supreme Court on appeal to consider testimony that was incompetent in an equity case.

In that opinion, this Court stated:

"Section 372(1), Title 7, Code 1940, 1947 Cum. Pocket Part, Vol. Two, p. 44, provides in substance that in cases such as this it is unnecessary that objection be made to any testimony or evidence which may be offered by either party and on the consideration of such cases the trial court should consider only such

testimony as is relevant, material, competent and legal, and on appeal this court shall consider only such testimony as is relevant, material, competent and legal, unless specific objection was interposed and a ruling made on such objection by the trial court. * * *

* * * * * *

"In the instant case, counsel for Lenora Redwine Jackson objected to this line of testimony by the complainant at the time the evidence was elicited on the ground that he was an incompetent witness in that respect. Written objections were filed, which were included in the note of testimony or note of submission. However, the trial court did not specifically rule on those objections, but the decree of the trial court contains language indicating that it considered only legal evidence.

* * * * * *

"In view of the foregoing, we have not on this appeal considered that part of the testimony of complainant, W. K. Redwine, to which the exclusion provisions of § 433, Title 7, Code 1940 ("dead man's statute"), have application." Id., at 570–571, 575, 49 So.2d at 121.

The fact that there was no specific ruling on objections by the Commissioner in a disciplinary proceeding under Rule 18, Section B, does not alter the foregoing. This Court has on prior occasions stated that it is presumed that the Board of Commissioners considered only the competent testimony and that it did not consider the evidence that was incompetent. See Ex Parte Montgomery, 244 Ala. 91, 12 So.2d 314.

At the hearing held on December 6, 1968, the following colloquy occurred between the Commissioner and counsel for the respective parties:

"MR. McCULLOUGH: Mr. Commissioner, may I make a statement at this time by making an objection now, rather than one which would be considered if we asked the Commissioner to consider the objection to each and every question and each and every answer that is propounded and sought to be elicited from the witness, to save time, that if we could have an agreement that the objection I now wish to make, not only to the hearing, itself, but to the questions and answers sought to be elicited as propounded to the witness, I would be given a standing objection to each and every aspect of this hearing today—

"MR. MORROW: Mr. Commissioner, I have no objection to that.

"MR. McCULLOUGH: Since he is going to be tried under the equity rules, there is no sense in my sitting here, objecting to every question asked.

"MR. MORROW: And I would, of course, remind the Commissioner and counsel for the respondent that I think Rule 18 B protects him in that regard, and I have no objection to the proceeding on that premises.

"THE COMMISSIONER: Since the complainant—if that is the proper term—has no objection to it, I certainly have no objection to it, and I am inclined to agree. However, that you would be entitled to make such an objection under the rules, regardless—

"MR. McCULLOUGH: Yes.

"THE COMMISSIONER:—You would not waive anything by not making an objection to any question.

"MR. McCULLOUGH: Like taking an exception in a civil case, I want to make sure it is in the record.

"THE COMMISSIONER: That is perfectly all right. The record will so indicate. The record will indicate that you have reserved the right that you do object to each question as it is propounded.

"MR. McCULLOUGH: And we object—excuse me.

"THE COMMISSIONER: And the record will not show, however, that the Commissioner overruled your objection to each and every question, because the record will show we are taking it under Rule 18, where I am not required to rule on it.

"MR. McCULLOUGH: Yes, sir.

"THE COMMISSIONER: And the commissioners—Board of Commissioners will consider only such testimony as is relevant and material to these proceedings."

Petitioner's argument is to the effect that Rule 18, Section B, supra, prohibits petitioner from interposing timely objections to evidence during the progress of the proceeding. As indicated in the colloquy above, petitioner not only took a standing objection to any and all questions propounded during the hearing, but also reserved the right to interpose specific objections. Under Rule 18, Section B, supra, a party is not penalized because of his failure to object to proffered testimony which is irrelevant, immaterial, or incompetent. Nevertheless, a party is given every opportunity to object. The failure of the Commissioner in the case at bar to rule on specific objections as interposed does not alter the fact that only relevant, material and competent testimony and evidence can be considered in the determination of the cause; this is true, both before the Board of Commissioners and this Court.

In In re McKay, 280 Ala. 174, 191 So. 2d 1, speaking to the question of due process in disbarment proceedings, this Court stated:

"The question for determination in disbarment or disciplinary cases is the fundamental one of whether an attorney who is charged with professional dereliction should be permitted to continue in his office. Basically, the proceeding is an inquiry into the conduct of an attorney to determine whether action should be taken by a court to protect the public or the dignity of the court. * * *

"An attorney must be accorded due process in disbarment and disciplinary proceedings, and the requirements of due process are met when the attorney is served with charges or specifications reasonably informing him of the charges against him and the attorney is thereafter accorded a hearing with an opportunity to defend. * * *" Id., at 178–179, 191 So.2d at 5.

This Court feels that due process of law was provided petitioner under Rule 18, Section B, supra.

The judgment of disbarment must be affirmed. It is so ordered.

Affirmed.

LAWSON, SIMPSON, MERRILL, HARWOOD, BLOODWORTH, MADDOX and McCALL, JJ., concur.

COLEMAN, J., concurs in the result.

COLEMAN, Justice (concurring specially):

It appears that petitioner Edwards, in a suit for divorce, represented to the Circuit Court of Jefferson County that the complainant and respondent, John M. Buck and Dianne J. Buck, were residents of Alabama when petitioner knew that said representations were false. Charges Two and Three against petitioner appear to be based on petitioner's alleged false representation.

The testimony given by Dianne J. Buck is to effect that neither complainant nor respondent was a resident of Alabama at the time petitioner represented that they were Alabama residents. The evidence supports a reasonable inference that petitioner knew or had reasonable cause to believe that neither of the Bucks were residents of Alabama when petitioner represented to the court that they were such residents. In my

opinion, this evidence is sufficient to sustain a finding that petitioner was guilty of the offenses alleged in Charges Two and Three. For the reason that the evidence supports a finding of guilt under Charges Two and Three, I concur in the judgment of affirmance.

I do not agree that the failure of witnesses to find a public or private record in Jefferson County showing that a certain person had a driver's license, or had been a registered voter, or had been furnished electric or gas service, or had been listed in a city directory, is sufficient to support a finding that such a person was not a resident of Alabama and that petitioner knew or had reasonable cause to believe that such a person was not a resident of Alabama.