461 A.2d 1227

**Harry J. DIAMOND**

v.

**Dolores DIAMOND, Appellant.**

Supreme Court of Pennsylvania.

July 1, 1983.

Argued April 19, 1983.

Decided July 1, 1983.

Reargument Denied Aug. 19, 1983.

Robert A. Rovner, Feasterville, for appellant.

Frank L. Newburger, III, Norristown, for appellee.

Before ROBERTS, C.J., and NIX, FLAHERTY, McDER-MOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

ROBERTS, Chief Justice.

Appellant, Dolores Diamond, appeals from an order of the Superior Court, 293 Pa.Super. 608, 435 A.2d 647 affirming a decree of annulment which the Court of Common Pleas of Bucks County entered in favor of appellee, Harry Diamond. At issue is whether appellee was properly permitted to challenge the validity of his marriage to appellant on the basis of the purported invalidity of a decree of an Alabama court granting appellee a divorce from his former wife. As we agree with appellant that appellee was estopped from challenging their marriage on this basis, we vacate the order of the Superior Court and direct the dismissal of appellee's complaint seeking an annulment.

Appellee married Laura M. Berkey on December 9, 1961, in Stratford, New Jersey. They subsequently separated, and in early 1969, appellee, then a Pennsylvania resident, contacted an attorney in Alabama in order to obtain a divorce. The Alabama attorney sent appellee "consent forms," which appellee and Berkey executed. On July 25,

1969, appellee flew to Birmingham, Alabama, delivered the forms and a check for $460.00 to an attorney named Edwards, and returned immediately to Pennsylvania, without ever appearing in court. A few weeks later, appellee and Berkey received in the mail a "Final Decree of Divorce," dated July 28, 1969.[1]

Berkey remarried in February of 1970, and appellee married appellant in September of 1972, in Langhorne, Pennsylvania. On November 30, 1973, appellee filed a complaint in divorce against appellant, which alleged indignities to the person. The parties permanently separated at some time between 1975 and 1977.

On July 6, 1979, approximately six years after the complaint in divorce had been filed, appellee successfully petitioned the court of common pleas for permission to amend his complaint to request an annulment. Appellee's theory was that the Alabama divorce decree which he had obtained was invalid, that consequently he was still married to Berkey at the time of his marriage to appellant, and that, therefore, his marriage to appellant was void. See The Divorce Law, Act of May 2, 1929, P.L. 1237, § 12, as amended, 23 P.S. § 12 (1955).[2]

On January 31, 1980, at a hearing before a master, appellee presented no evidence in support of his request for a divorce and proceeded solely on his request for an annulment. Appellee relied primarily upon a "Certificate of Search of Records" obtained by his attorney from the Registrar in Equity of the Circuit Court of Winston County,

1. A "K.C. Edwards" was disbarred from the practice of law for falsely representing to the courts of Alabama that parties in divorce were bona fide residents of that state. See *In re Edwards,* 287 Ala. 86, 248 So.2d 130 (1971). Edwards and Bob Moore, Jr., who is identified on appellee's "Final Decree of Divorce" as the judge entering the decree, were convicted of conspiracy to defraud by use of the mails, 18 U.S.C. § 1341, for fraudulently representing to out-of-state residents that they could obtain valid Alabama divorces. See *United States v. Edwards,* 458 F.2d 875 (5th Cir.1972).

2. The Divorce Law was repealed by the Divorce Code, Act of April 2, 1980, P.L. 63, § 801(a), 23 P.S. § 801(a) (Supp.1983). Statutory provisions relating to annulment of marriages are now contained in Chapter 2 of the Divorce Code, 23 P.S. § 201 et seq.

Alabama, which stated that no record could be located in any case bearing appellee's name and the case number given in the divorce decree. On cross-examination, appellee acknowledged that he and Berkey had both believed that the decree was valid, that Berkey had remarried within a year of the issuance of the decree, and that he had submitted the decree to the district justice who performed his marriage to appellant as proof of his marital status. After appellee's presentation of evidence, the master agreed with appellant that appellee was estopped from challenging the validity of the Alabama divorce decree which appellee had procured and upon which appellant had innocently relied in marrying him.

Appellee filed exceptions to the master's report. The Court of Common Pleas of Bucks County en banc granted the exceptions and issued a decree annulling the marriage. 19 D. & C.3d 1 (Bucks Co.1980). The Superior Court affirmed on the opinion of the court of common pleas, 293 Pa.Super. 608, 435 A.2d 647 (1981), and this Court granted allowance of appeal.

At the time appellee amended his complaint, annulments were governed by section 12 of the Divorce Law, 23 P.S. § 12, which provided in relevant part:

"In all cases where a supposed or alleged marriage shall have been contracted, which is absolutely void by reason of one of the parties thereto having a spouse living at the time of the supposed or alleged marriage, . . . such supposed or alleged marriage, may, upon the application of either party, be declared null and void . . . ."

The court of common pleas concluded that the language "upon application of either party" manifests a legislative intent to bar the presentation of any equitable defense in an annulment proceeding. In support of its conclusion, the court relied upon *DeMedio v. DeMedio,* 215 Pa.Super. 255, 257 A.2d 290 (1969), where the Superior Court stated:

"Our [annulment] statute is clear: Either party can apply for the annulment of a void marriage; the application is not restricted to an innocent and injured spouse and therefore the annulment can be obtained regardless of

plaintiff's knowledge either before or after the void marriage ceremony. Under our statute, neither estoppel, unclean hands, laches, or ratification can make valid a defective marriage ceremony. Any complaint as to the reasonableness of the rule must be addressed to the Legislature and not to this court."

215 Pa.Super. at 260, 257 A.2d at 293 (footnote omitted).

Contrary to the view expressed by the Superior Court in *DeMedio,* section 12 of the Divorce Law does not bar the presentation of equitable defenses in an annulment proceeding. As amended in 1929, section 12 does permit "either party" to a marriage to apply for an annulment, whereas prior law permitted application only by an "innocent or injured party." See Act of April 14, 1859, P.L. 647. However, it is clear that the Legislature did not intend the right to apply for an annulment to be synonymous with a right to obtain one, for section 12 provides only that, upon application of either party, the marriage "may" be declared null and void. Moreover, *DeMedio's* interpretation of section 12 is contradicted by a long line of Pennsylvania cases which recognize the principle, now expressed in Restatement (Second) of Conflicts of Law § 74 (1969), that a "person may be precluded from attacking the validity of a foreign divorce decree if, under the circumstances, it would be inequitable for him to do so." See, e.g., *Romanski Estate,* 354 Pa. 261, 47 A.2d 233 (1946); *Rosen v. Sitner,* 274 Pa.Super. 445, 418 A.2d 490 (1980); *Sargent v. Sargent,* 225 Pa.Super. 1, 307 A.2d 353 (1973); *Commonwealth ex rel. Bortin v. Bortin,* 210 Pa.Super. 355, 234 A.2d 55 (1967); *Commonwealth v. Case,* 200 Pa.Super. 200, 189 A.2d 756 (1963); *Commonwealth ex rel. Wenz v. Wenz,* 195 Pa.Super. 593, 171 A.2d 529 (1961); *DeRosay v. DeRosay,* 162 Pa.Super. 333, 57 A.2d 685 (1948).[3]

Here, appellee is the party who obtained the divorce. Appellee, appellant, appellee's first wife and her second

---

**3.** Similarly, most other jurisdictions abide by the rule that a spouse who has obtained a divorce decree can be estopped from later asserting its invalidity. See *Perrin v. Perrin,* 408 F.2d 107 (3d Cir.1969); *Diehl v. United States,* 438 F.2d 705 (5th Cir.), cert. denied, 404 U.S. 830, 92 S.Ct. 67, 30 L.Ed.2d 59 (1971); *Unruh v.*

husband all have relied on the validity of the decree. Appellee waited over ten years after he received the decree before mounting a challenge to its validity. As the master correctly concluded, it would be inequitable in these circumstances to permit appellee to contest the validity of his marriage to appellant on the basis of the claimed invalidity of the Alabama decree. The order of the Superior Court, therefore, must be reversed.

Order of the Superior Court reversed and appellee's complaint dismissed.

LARSEN, J., did not participate in the consideration or decision of this case.

*Industrial Commission of Arizona,* 81 Ariz. 118, 301 P.2d 1029 (1956); *Rediker v. Rediker,* 35 Cal.2d 796, 221 P.2d 1 (1950); *Oakely v. Oakely,* 30 Colo.App. 292, 493 P.2d 381 (1971); *Perrenoud v. Perrenoud,* 206 Kan. 559, 480 P.2d 749 (1971); *Poor v. Poor,* 381 Mass. 392, 409 N.E.2d 758 (1980); *Kazin v. Kazin,* 81 N.J. 85, 405 A.2d 360 (1979); *Krause v. Krause,* 282 N.Y. 355, 26 N.E.2d 290 (1940); Restatement of Conflict of Laws § 112 (1934) ("validity of . . . divorce decree cannot be questioned . . . either by a spouse who has obtained such decree . . . or by a spouse who takes advantage of such decree by remarrying"). This rule of estoppel has been held to apply "even where the divorce has been judicially held invalid, or where no final divorce had occurred at the time of the second marriage, or where the divorce was by mail-order, or where there was no judicial divorce at all." Clark, *Estoppel Against Jurisdictional Attack on Decrees of Divorce,* 70 Yale L.J. 44, 59–60 (1960) (citing cases).